TASHIMA, Circuit Judge,
dissenting.
While I agree with most of the majority’s disposition of the issues raised by this appeal, I part company on two issues. I believe that the district court abused its discretion in denying AmerisourceBergen’s motion for leave to amend because the motion was made well before the deadline set by the court for the making of such motions and because Dialysist West has shown absolutely no prejudice. I further believe that the district court abused its *957 discretion in refusing to stay the judgment pursuant to Federal Rule of Civil Procedure 62(h) because it failed to perform an analysis separate from its Rule 54(b) analysis and failed to give adequate consideration to Dialysist West’s insolvency. For these reasons, I respectfully dissent from Parts III.B. and III.D. of the majority opinion, and from the judgment of affir-mance.
1. Leave to Amend.
Federal Rule of Civil Procedure 15 provides that “leave to amend shall be freely given when justice so requires.” Fed. R.Civ.P. 15(a). Absent prejudice, or a “strong showing” of the other factors, such as undue delay, bad faith, or dilatory motive, “there exists a presumption under Rule 15(a) in favor of granting leave to amend.” Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.2003) (per curiam); see also Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1530 (9th Cir.1995) (stating that, although the denial of leave to amend after a responsive pleading has been filed is reviewed for an abuse of discretion, “we strictly review such denial in light of the strong policy permitting amendment”). Amendments are to be permitted liberally because, as the Supreme Court observed many years ago, “[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.” Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).
On January 16, 2003, the district court held the scheduling conference, pursuant to Federal Rule of Civil Procedure 16, and set the trial date and the deadlines for discovery and dispositive motions. On June 19, 2003, the parties filed a joint motion to extend the dates in the pretrial schedule. The district court granted the motion on July 7, 2003, and accordingly filed an order adjusting the pretrial schedule, based on the joint motion of the parties and on a showing of good cause. This order provided that the last date to file motions to amend was extended from June 2, 2003, to December 2, 2003. The order also extended the non-expert discovery cutoff date from August 1, 2003, to February 2, 2004, and for expert discovery from October 17, 2003, to April 19, 2004. The court deleted the reference to the pretrial conference, stating that it would address the final pretrial arrangements at a later date. AmerisourceBergen’s motion for leave to amend was filed on August 25, 2003 — more than three months before the cutoff date for such motions and almost eight months before discovery was to be completed.
“A pretrial order controls the subsequent course of the ction unless modified ‘upon a showing of good cause.’ ” El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir.2005) (quoting Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir.2002)), cert. denied, — U.S. —, 126 S.Ct. 1470, 164 L.Ed.2d 248 (2006); see also Arsement v. Spinnaker Exploration Co., 400 F.3d 238, 245 (5th Cir.2005) (“It goes without saying that a pre-trial order controls the scope and course of trial....”); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir.1992) (“The scheduling order ‘controls] the subsequent course of the action’ unless modified by the court.”) (quoting Fed. R.Civ.P. 16(e)) (alteration in original).
We have often affirmed the denial of leave to amend when the motion was made after the cutoff date for such motions, or when discovery had closed or was about to close. For example, in Zivkovic, the motion to amend was filed three months after the deadline established by the court and only five days before discovery was to be completed. We concluded that, under those circumstances, the district court did *958 not abuse its discretion in denying the motion to amend. Zivkovic, 302 F.3d at 1087; see also, e.g., Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 983, 986 (9th Cir.1999) (where the motion to amend was made more than four months after the cutoff date for motions to amend, stating that “[a] need to reopen discovery and therefore delay the proceedings supports a district court’s finding of prejudice from a delayed motion to amend the complaint”); Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir.1998) (affirming the denial of leave to amend where the motion was made “on the eve of the discovery deadline”).
Our jurisprudence thus establishes that where a motion to amend the pleadings is made within the time established by the pretrial scheduling order for the making of such motions, the motion is presumptively timely. Otherwise, it would be a pointless exercise to establish cutoff dates in a Rule 16 scheduling order.[1] Here, the motion to amend was made more than three months before the motion cutoff date; thus, “on its face, the motion was timely.” Halbert v. City of Sherman, Tex., 33 F.3d 526, 529 (5th Cir.1994). Moreover, eight months remained before the completion of discovery.
The majority has cited no case in which a motion to amend was made within the deadline set by the district court and yet denied as untimely. Indeed, such a case would be difficult to find because common sense and Rule 16 dictate that a motion filed “well within the ... scheduling order deadline for the amendment of pleadings” is timely “on its face.” Id.
Contrary to the majority’s assertion, taking into account the fact that the motion was presumptively timely does not force the district court to “accept all ‘timely’ motions filed before the court-appointed deadline.”[2] Maj. Op. at 952. In fact, the remaining factors, including prejudice and bad faith, remain to be assessed. Given the undeniable conclusion that the motion was presumptively timely, it remains for Dialysist West to establish prejudice sufficient to overcome the presumption under Rule 15(a) in favor of granting leave to amend. Eminence Capital, 316 F.3d at 1052.
In DCD Programs, Ltd. v. Leighton, 833 F.2d 183 (9th Cir.1987), we reversed the district court’s denial of the plaintiffs’ motion to file a fourth amended complaint. Id. at 190. We rejected the defendant’s argument that it would be prejudiced by the delay in naming it to the suit, stating that, “[gjiven that this case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled, there is no evidence that [the defendant] would be prejudiced by the timing of the proposed amendment.” Id. at 187-88.
The Eighth Circuit similarly has relied on the fact that trial was nearly three months away in concluding that the district court abused its discretion in denying leave to amend an answer. Dennis v. Dillard Dep’t Stores, Inc., 207 F.3d 523, 526 (8th Cir.2000); see also Halbert, 33 F.3d at 530 (concluding that the district court erred in denying “the facially valid motion to amend,” where the motion to amend was made four months before the scheduling order deadline). The court reasoned that, although discovery had *959 closed, the district court had discretion to reopen it for the limited purpose of exploring the additional defense raised by the amendment, noting that “an ‘adverse party’s burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.’ ” Dennis, 207 F.3d at 526 (quoting United States ex rel. Maritime Admin. v. Cont’l Ill. Nat’l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir.1989)). The court further reasoned that the three months remaining until trial was ample time to conduct any further discovery that may have been required. Id.
Similar to DCD, the trial date in the instant case had not even been set at the time AmerisourceBergen filed its motion to amend. The district court already had found that there was good cause to modify the pretrial schedule, giving the parties six additional months to file motions to amend, to complete discovery, and to file disposi-tive motions. AmerisourceBergen’s motion was filed less than two months after the court had modified the schedule, and well before the deadline established by the modified schedule. Thus, this case falls squarely within the reasoning of DCD, Dennis, and Halbert.
The majority asserts that this case is distinguishable from DCD and Halbert because the district court provided sufficient reasons to justify the denial of the leave to amend. Maj. op. at 953. The district court relied primarily on a finding of prejudice to Dialysist West in denying the motion to amend, but the court did not explain how Dialysist West would be prejudiced. We have noted that “[b]ald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to ‘facilitate a proper disposition on the merits.’ ” Hurn v. Ret. Fund Trust of the Plumbing, Heating & Piping Indus., 648 F.2d 1252, 1254 (9th Cir.1981) (quoting Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); see also Eminence Capital, 316 F.3d at 1052 (“A simple denial of leave to amend without any explanation by the district court is subject to reversal. Such a judgment is ‘not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.’ ” (quoting Foman, 371 U.S. at 182, 83 S.Ct. 227)).
The majority asserts that the proposed amendment would have imposed “potentially high, additional litigation costs on Dialysist West.”[3] Maj. op. at 953. Ameri-sourceBergen disputes the district court’s statement that the parties agreed that the proposed amendment would require further discovery.[4] Even if further discovery were required, however, nearly eight months remained before the discovery cutoff date- — a deadline based on the parties’ own stipulation. Given that the parties had agreed on this schedule, it is difficult to understand how Dialysist West could have been prejudiced, even if further discovery were required.
The reason the majority gives for the potential additional litigation costs is that AmerisourceBergen “drastically changed its litigation theory.” Maj. op. at 953. Yet AmerisourceBergen alleged in its proposed amendment that it purchased both Epogen and Procrit from Dialysist West, the two are identical drugs, they are manufactured by the same company, although Procrit is *960 marketed by a different company, and both drugs were the subject of announcements regarding counterfeit products. The assertion that the addition of the Pro-mt claim constitutes a drastic change in AmerisourceBergen’s litigation theory is thus not supported by the record.
Dialysist West bore the burden of showing that it would be prejudiced by the proposed amendment. See Eminence Capital, 316 F.3d at 1052. Dialysist West did not contend, and the district court did not find, that any additional discovery that might have been required could not have been completed within the time remaining before the discovery cutoff date. The need to undertake additional discovery cannot be classified as prejudice so long as ample time remains, as it did in this case, to complete that discovery before the discovery cutoff date. See, e.g., Arthur v. Maersk, Inc., 434 F.3d 196, 206 (3d Cir.2006) (finding no prejudice where the plaintiffs proposed amendment was filed eleven months after the original complaint, reasoning that the defendant “had not argued that the delay impaired its ability to defend against the suit or that it ‘was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendment [ ] been timely’ ”) (quoting Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir.1989)) (alterations in original); Dennis, 207 F.3d at 526 (stating that the mere fact that an adverse party must undertake discovery does not suffice to warrant denying a motion to amend); DCD, 833 F.2d at 188 (reasoning that, because the case was at the discovery stage, there was no evidence of prejudice). After all, discovery is an ordinary incident and burden of litigation sanctioned by the Federal Rules of Civil Procedure. I thus disagree with the majority’s characterization of the need to conduct discovery as prejudicial. The majority simply misunderstands the meaning of “prejudice” in this context — or willfully misapplies it.
As in DCD and Dennis, I would therefore hold that Dialysist West has failed to demonstrate any prejudice from the proposed amendment, let alone prejudice sufficient to overcome the presumption in favor of granting leave to amend. See, e.g., Adam v. Hawaii, 235 F.3d 1160, 1164 (9th Cir.2001) (concluding that the district court erred by denying the motion to amend where the defendants failed to identify any prejudice they would suffer from the amendment and “at this point in the proceedings, there has been no discovery, nor has a trial date been set”), overruled on other grounds by Green v. City of Tucson, 255 F.3d 1086 (9th Cir.2001) (en banc); S.S. Silberblatt, Inc. v. E. Harlem Pilot Block Bldg. 1 Hous. Dev. Fund Co., 608 F.2d 28, 42-43 (2d Cir.1979) (reversing the denial of the appellant’s motion for leave to amend, rejecting the appellee’s argument that it would suffer undue prejudice because of the extensive discovery that would be required, stating that this was insufficient to overcome the policy in favor of permitting amendment, “particularly when trial has not yet commenced and is not likely to do so for some time”).
The district court also stated that Amer-isourceBergen’s proposed amendment sought to contradict established facts of the case. The majority similarly relies on this reasoning. See Maj. Op. at 952-953. But this is the very nature and purpose of an amendment. “ ‘[A]n amended pleading supersedes the original.’ ” Armstrong v. Davis, 275 F.3d 849, 878 n. 40 (9th Cir.2001) (quoting Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir.1989)) (alteration in the original). Thus, although “a statement in a complaint may serve as a judicial admission,” the admission is no longer binding if the party subsequently amends the pleading. Sicor *961 Ltd. v. Cetus Corp., 51 F.3d 848, 859 (9th Cir.1995); see also, e.g., 188 LLC v. Trinity Indus., 300 F.3d 730, 736 (7th Cir.2002) (“When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions.”); 3 James Wm. Moore et ah, Moore’s Federal Practice § 15.17[3] (3d ed.2005) (stating that, “in the more usual scenario, a court may permit a party amending a pleading to withdraw an admission contained in the original pleading”). I therefore disagree with the majority that “the district court ... provided sufficient ‘justifying reasons’ for denying AmerisourceBergen’s leave to amend.” Maj. op. at 952.
Finally, the majority asserts that permitting the amendment “would have unfairly delayed Dialysist West’s collection of a judgment worth over $2.2 million.” Maj. op. at 953-954.
There is nothing in the record, however, to support the assertion that final judgment would have been unnecessarily delayed. The pretrial conference date had previously been vacated and no trial date had been set, and there was ample time left before the discovery cutoff date to conduct any necessary discovery. Thus, nothing in this record supports the majority’s assertion of unnecessary delay.
The district court abused its discretion in denying AmerisourceBergen’s timely motion to amend in the absence of any showing of prejudice by Dialysist West.
2. Stay of the Judgment.
I also believe that the district court abused its discretion in denying Ameri-sourceBergen’s motion to stay the judgment pursuant to Rule 62(h). After directing entry of final judgment pursuant to Rule 54(b) against AmerisourceBergen on Dialysist West’s second claim for relief in its counterclaim, the district court denied AmerisourceBergen’s motion to stay the judgment pursuant to Rule 62(h). To support its order, the district court stated only that AmerisourceBergen’s motion was based on Dialysist West’s insolvency, and that it had considered the issue in its prior order and found the argument unpersuasive. But the insolvency analysis under Rule 62(h) is different from the insolvency analysis under Rule 54(b), and the district court did not make that analysis.
This case involved several claims and counterclaims. The district court directed entry of judgment on the pleadings with respect to Dialysist West’s second claim for relief in its counterclaim, related to non-Epogen products. Still at issue are AmerisourceBergen’s claims regarding Epogen and Dialysist West’s first claim for relief. Although the district court ruled against AmerisourceBergen on the setoff issue, AmerisourceBergen’s claim regarding the counterfeit Epogen remains. Am-erisourceBergen argued below that enforcement of the judgment should be stayed because of Dialysist West’s insolvency. The district court docket indicates that Dialysist West had, in fact, filed for bankruptcy as of May 2004.
In Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the Supreme Court examined the district court’s entry of final judgment under Rule 54(b), in favor of Curtiss-Wright, on some of the claims in a multi-claim suit. The district court’s entry of judgment was based, in part, on the fact that the litigation on the remaining claims would continue for months, if not years, and on the determination that both litigants were financially sound. The Supreme Court agreed that, although General Electric’s pending counterclaims created the possibility of a setoff against the amount it owed Curtiss-Wright, Curtiss-Wright was financially sound and would be able to satisfy any judgment on the eoun- *962 terclaims. Id. at 11-12, 100 S.Ct. 1460. The Court further stated that, “if Curtiss-Wright were under a threat of insolvency, that factor alone would weigh against qualifying” because the threat alone would cast doubt on Curtiss-Wright’s ability to satisfy any counterclaims, if General Electric were to prevail. Id. at 12, 100 S.Ct. 1460. The Court noted that Rule 62(h) would allow the district court to protect the parties by having the losing party deposit the amount of the judgment with the court, such that “valid considerations of economic duress and solvency, which do not affect the juridical considerations involved in a Rule 54(b) determination, can be provided for without preventing Rule 54(b) certification.” Id. at 13 n. 3, 100 S.Ct. 1460.
The Supreme Court again cited the threat of insolvency in Reiter v. Cooper, 507 U.S. 258, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), in which the issue was whether, “when a shipper defends against a motor common carrier’s suit to collect tariff rates with the claim that the tariff rates were unreasonable, the court should proceed immediately to judgment on the carrier’s complaint without waiting for the Interstate Commerce Commission ... to rule on the reasonableness issue.” Id. at 260, 113 S.Ct. 1213. The Court concluded that the “ordinary rules governing counterclaims” applied and stated that, “[i]n the ordinary case, where a carrier is solvent and has promptly initiated suit, the equities favor separate judgment on the principal claim.” Id. at 270, 113 S.Ct. 1213. The equities to be balanced in a Rule 54(b) consideration “change, however, when the suing carrier is in bankruptcy.” Id. Although insolvency is not an “absolute bar” to Rule 54(b) certification, the Court reasoned that a district court could protect against the threat of insolvency by entering separate judgment but staying enforcement of the judgment under Rule 62(h). Id. at 270-71, 113 S.Ct. 1213. Curtiss-Wñght and Reiter thus indicate that, although entry of a final judgment under Rule 54(b) may be proper, the district court should rely on Rule 62(h) to protect the parties when there are “valid considerations of economic duress and solvency.” Curtiss-Wright, 446 U.S. at 13 n. 3, 100 S.Ct. 1460; see Pereira v. Cogan, 275 B.R. 472, 475 (S.D.N.Y.2002) (“ ‘[t]he Supreme Court has suggested that where Rule 54(b) certification is appropriate, courts can protect all parties against the uncertainties posed by the possibility of a large setoff and by the possibility of the insolvency of a judgment debtor’ ” by staying enforcement pursuant to Rule 62(h) and having the losing party deposit the amount of the judgment with the court) (quoting Bowne of New York City, Inc. v. AmBase Corp., 161 F.R.D. 270, 274 (S.D.N.Y.1995)).
The district court here denied Ameri-sourceBergen’s motion to stay enforcement of the judgment without any discussion, stating only that it had considered AmerisourceBergen’s argument regarding Dialysist West’s insolvency when it granted Dialysist West’s motion for judgment on the pleadings, and citing its prior order. But the discussion cited by the district court regarding Dialysist West’s “alleged threat of insolvency” was made in the context of AmerisourceBergen’s argument that it was entitled to equitable setoff because of Dialysist West’s insolvency, which is a completely different question from that raised by the motion under Rule 62(h).
AmerisourceBergen sought a stay of the enforcement of the judgment because of Dialysist West’s undisputed insolvency and the claims that remained to be resolved. The Supreme Court’s references to Rule 62(h) in Curtiss-Wright and Reiter indicate that the instant case presents exactly the type of situation in which a stay of the enforcement of the judgment is appropri *963 ate. For example, in a case similar to the instant case that involved multiple claims and counterclaims, the First Circuit reasoned that, unlike Curtiss-Wright, the plaintiff “would likely be left with no way to collect” if it established its claims, because the defendant was insolvent. ITV Direct, Inc. v. Healthy Solutions, LLC, 445 F.3d 66, 73 (1st Cir.2006). Nonetheless, the court affirmed the district court’s entry of judgment under Rule 54(b) because the plaintiff had dismissed its claims, but noted that the plaintiff “was not compelled to dismiss its claims against [the defendant] simply because the district court ruled against it on the 54(b) certification,” citing Rule 62(h). Id.; see also, e.g., Schieffelin & Co. v. Valley Liquors, Inc., 823 F.2d 1064, 1066 (7th Cir.1987) (affirming the entry of final judgment under Rule 54(b) despite a remaining counterclaim, but noting that “enforcement might have been stayed under appropriate conditions under Rule 62(h),” although the party did not make such a claim); Navajo Tribe of Indians v. United States, 176 Ct.Cl. 502, 364 F.2d 320, 347 (1966) (holding that, although the plaintiff was entitled to entry of a separate final judgment, payment of the judgment should be stayed pursuant to Rule 62(h) because the validity of the defendant’s counterclaim had not yet been determined); EMI Music Mktg. v. Avatar Records, Inc., 317 F.Supp.2d 412, 424-25 (S.D.N.Y.2004) (directing the entry of final judgment pursuant to Rule 54(b) but staying enforcement of the judgment because of the claims and counterclaims that remained to be resolved and the possibility that the judgment might be reduced if the defendant prevailed on its counterclaims).
The majority reasons that staying the judgment would “effectively sanction” Am-erisourceBergen’s “self-help tactics” because, if it succeeds on its Epogen claim, it “will have avoided paying funds it owes Dialysist West and would unjustifiably leap-frog other creditors.” Maj. op. at 956.
AmerisourceBergen cannot continue to litigate its Epogen claim, however, because Dialysist West has filed for bankruptcy and, pursuant to 11 U.S.C. § 362(a)(1), the case has been stayed by the district court. See 11 U.S.C. § 362(a) (stating that a bankruptcy petition operates as a stay of, inter alia, the continuation of a judicial proceeding against the debtor that was commenced prior to the bankruptcy filing); McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Petitit), 217 F.3d 1072, 1077 (9th Cir.2000) (explaining that the automatic stay under § 362 enjoins the continuation of any judicial proceedings against the debtor and the enforcement of prior judgments). Furthermore, even if AmerisourceBergen were permitted by the bankruptcy court to proceed with its action and then succeed on its Epogen claim, it still would be prohibited from enforcing its judgment by the automatic stay. See 11 U.S.C. § 362(a) (further stating that the bankruptcy petition stays a proceeding to recover a claim against the debtor that arose before the commencement of the bankruptcy case); Delpit v. Comm’r, 18 F.3d 768, 772 (9th Cir.1994) (stating that “a creditor’s attempt to enforce a pre-bankruptcy judgment outside of Bankruptcy Court would violate four provisions of Section 362 simultaneously”). AmerisourceBergen would simply become an unsecured creditor, in line with Dialysist West’s other unsecured creditors. Cf. Shoen v. Shoen (In re Shoen), 176 F.3d 1150, 1153 n. 1 (9th Cir.1999) (McKeown, J., dissenting) (stating that there was no dispute that the appellees, “as judgment creditors, but not lien creditors, hold unsecured claims”). Thus, contrary to the majority’s assertion, maj. op. at 955, AmerisourceBergen is prevented by the Bankruptcy Code from *964 “leap-frogging” Dialysist West’s other creditors.
As discussed supra, Curtiss-Wright and Reiter indicate that, when multiple claims and counterclaims are involved, and the district court grants certification under Rule 54(b), “valid considerations of economic duress and solvency” can be addressed by the use of Rule 62(h) to “protect all parties.” Curtiss-Wright, 446 U.S. at 13 n. 3, 100 S.Ct. 1460. When Dialysist West filed for bankruptcy, the judgment awarded on its second counterclaim became the property of the bankruptcy estate. See 11 U.S.C. § 541(a)(1) (describing property of the estate as “all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case”); Myron M. Sheinfeld et al., 3 Collier on Bankruptcy ¶ 541.08[5] (Lawrence P. King, ed., 15th ed. rev. 2005) (“Where a cause of action belonging to the debtor has been merged into judgment prior to bankruptcy, the estate succeeds to all rights under such judgment.”). Staying enforcement of the judgment would not have allowed AmerisourceBergen to avoid payment of the judgment and step in line ahead of other creditors; the Bankruptcy Code provides numerous protections of the property of the estate, such as the automatic stay and the avoidance of fraudulent or preferential transfers. Rather, a stay would have served the purpose contemplated by the Supreme Court in Curtiss-Wright of protecting AmerisourceBergen’s claims against Dialysist West’s insolvency.[5]
Because the district court failed to conduct any analysis of AmerisourceBergen’s Rule 62(h) motion and did not consider the effect of Dialysist West’s insolvency on its ability to satisfy any claims of Amerisour-ceBergen, I believe that the court abused its discretion in denying the Rule 62(h) motion.
For the foregoing reasons, I would reverse the judgment of the district court. I respectfully dissent.

. What would be the point, for example, of the rule’s requirement that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district court,” Fed.R.Civ.P. 16(b), if the schedule can be disregarded by the court and counsel.

. The majority’s use of quotation marks around "timely” is disingenuous; there is absolutely no question that the motion to amend was timely.

. There is no denying that litigation costs today are high. But if the "high cost" of additional litigation were a sufficient showing of prejudice, then virtually all but the most innocuous amendments could be denied as "prejudicial.” This surely cannot be the standard for denying leave to amend.

. In its memorandum in support of its motion to amend, AmerisourceBergen disputed Dialy-sist West's assertions regarding the need for further discovery that would arise from the proposed amendment.

. The majority apparently believes that the only right of AmerisourceBergen protectable by a stay is its equitable right of setoff. Maj. op. at 956 n. 12. This narrow focus, however, ignores that if the district court had allowed AmerisourceBergen to amend its reply, as I believe it should have, Dialysist West would not have been entitled to judgment on the pleadings on its second counterclaim because AmerisourceBergen would have been able to dispute the genuineness of the non-Epogen products on which that claim was based. Thus, the majority's assumption that AmerisourceBergen’s only right to payment from Dialysist West was based on setoff is incorrect. AmerisourceBergen's own claims against Dialysist West remained and still remain undetermined, and its ability to collect on those claims, should it ultimately prevail, is jeopardized by Dialysist West's bankruptcy.