**Mladen ZIVKOVIC, Plaintiff–Appellant,**

v.

**SOUTHERN CALIFORNIA EDISON COMPANY, Defendant–Appellee.**

No. 00–56867.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2002.

Filed Sept. 12, 2002.

Lillian Tomich, San Marino, CA, for plaintiff-appellant Mladen Zivkovic.

William D. Harn and John F. Guest, Rosemead, CA, for defendant-appellee Southern California Edison Co.

Before BROWNING, THOMAS and RAWLINSON, Circuit Judges.

**OPINION**

RAWLINSON, Circuit Judge.

Plaintiff–Appellant Mladen Zivkovic ("Zivkovic") appeals the district court's grant of judgment in favor of Defendant–Appellee Southern California Edison Co. ("Edison") after a bench trial on Zivkovic's claim of disability discrimination under the Americans with Disabilities Act ("ADA"). Zivkovic also appeals certain procedural rulings made by the district court. Zivkovic's appeal is timely and we have jurisdiction pursuant to 28 U.S.C. § 1291. The district court did not err when making its procedural rulings. However, the district court failed to make sufficiently detailed factual findings to allow for complete review of its decision on the merits. Accordingly, we vacate the district court's judgment and remand with the instruction that the district court make clear findings in accordance with Fed.R.Civ.P. 52(a).

*BACKGROUND*

On December 29, 1998, Zivkovic, filed a *pro se* two-page complaint in federal court alleging that Edison discriminated against him during the hiring process for a meter reader job. On February 12, 1999, Edison filed its answer denying discrimination. Thereafter, Zivkovic retained counsel who filed a substitution of attorney on May 11, 1999.

On June 14, 1999, the district court held a mandatory status conference where all parties were represented by counsel. At the conference, the district court scheduled a one-day trial to be held on January 11,

2000. The court also established the following schedule: "Motions to amend pleading to join other parties must be filed by 7/14/99;" "Discovery must be completed by 10/25/99;" "All dispositive motions must be heard by 11/29/99;" and "The Pretrial Conference is set for 12/20/99 at 1:00 P.M."

On July 14, 1999, Zivkovic requested a jury trial. His request was denied on August 31, 1999. On October 20, 1999, Zivkovic moved for leave to file a first amended complaint. The motion was denied initially on November 18, 1999, and upon reconsideration on May 3, 2000. On March 3, 2000, Zivkovic moved to modify the scheduling order, to continue the trial date, and to reopen discovery. That motion was also denied on May 3, 2000.

After various continuances, the case was scheduled for a one-day bench trial, which began on August 31, 2000. At trial, the evidence showed that Zivkovic, who is hard of hearing, applied for the position of meter reader at Edison in 1991. Zivkovic passed the written qualifying test but no interview was scheduled. In 1993, Zivkovic filled out another application. In a letter dated July 21, 1993, Edison notified Zivkovic of another test but also indicated that if "you have taken this test previously, do not attend." The letter instructed that "if you have a disability that you feel requires special arrangements to take the tests, please contact us by telephone." Zivkovic retook the test and passed.

Zivkovic testified that he was interviewed by two Edison employees who intimated that he had passed the interview and would be given a job when there was an opening. Edison's recruiter, Todd Fagan ("Fagan"), testified that he had no record of that interview. Zivkovic further testified that he or his mother periodically inquired at Edison to see when an opening

would become available. Zivkovic's mother testified that when she called Edison in January, 1997 and spoke with Fagan, he told her, "I am going to send [Zivkovic] to work." Zivkovic's mother further testified that Fagan indicated Zivkovic passed the interview and written test, but his application was missing and her son should mail in another application for the file. Zivkovic's mother also testified that Fagan needed Zivkovic to come to his office and "speak about the job a little bit." Zivkovic's mother did not indicate to Fagan that her son needed an interpreter.

Fagan testified that he informed Zivkovic's mother about Zivkovic's test scores, and committed to send out an application which Zivkovic needed to complete and return, but gave no assurances regarding the application process. Fagan further testified that he later met Zivkovic in the lobby of his office when Zivkovic was dropping off his application. Fagan explained the next step would be scheduling an interview. Fagan testified that Zivkovic did not tell him he was hearing impaired or that he needed an interpreter, but he realized that Zivkovic had a hearing problem from speaking with him and from his application.[1] Nevertheless, Fagan believed that Zivkovic understood everything said.

Zivkovic testified that Fagan did not mention an oral interview. Instead, Zivkovic related that Fagan reassured Zivkovic not to worry because he would get the job "in about two weeks." Zivkovic recalled Fagan discussing a meeting that would take place, and testified that he told Fagan to call his mother about the date of the meeting. Zivkovic also stated that he told Fagan he was hard of hearing and knew sign language, to which Fagan responded, "No problem."

---

1. On his application, Zivkovic checked the box indicating he was disabled and wrote next to it "hard of hearing."

Zivkovic's mother then testified that she called Fagan two weeks later, whereupon Fagan informed her that Zivkovic should attend a meeting on April 16, 1997. She relayed this information to her son.

On April 16, 1997, Zivkovic met with Edison representatives Rudy Rea ("Rea") and John Ortega ("Ortega"). Rea admitted to reviewing part of Zivkovic's application but was not aware before the meeting that Zivkovic had a hearing problem. At the beginning of the meeting, Rea and Ortega informed Zivkovic that they would interview him. Zivkovic had difficulty understanding the questions, and Rea could tell he was hard of hearing. Rea and Ortega testified that they allowed Zivkovic to read the questions but he nevertheless failed to provide responsive answers. Zivkovic testified that no one showed him any of the questions during the interview. Zivkovic added that he had difficulty reading their lips, told the interviewers to repeat the questions because he could not understand them, and sometimes guessed at the answers. At the end of the interview, Zivkovic stated that he could have done better if an interpreter was provided. Both Rea and Ortega noted on their interview scoring sheets that Zivkovic may have done better on the interview if a sign language interpreter had been present.

After reviewing the interview notes, Fagan called Zivkovic's mother, offered to arrange a second interview, and asked if Zivkovic needed a sign language interpreter. Fagan testified that Zivkovic's mother replied that her son would not need an interpreter. Zivkovic's mother recalled that she responded by stating Fagan should ask her son. Zivkovic recollected that he told his mother to tell Fagan that he needed an interpreter. In any event, Fagan told Zivkovic's mother that a second interview would be set for June 19, 1997.

Zivkovic reported for the June interview and met with Fagan and Ed Sumpter ("Sumpter"), a project manager. Fagan and Sumpter testified that Fagan asked Zivkovic if he needed a sign language interpreter, to which Zivkovic responded, "no." Zivkovic related that at no time before or during the June interview did anyone ask if he needed an interpreter. Zivkovic admitted that he never asked for an interpreter, but expected an interpreter to be present based on his prior statements of being hard of hearing, knowing sign language, and that he could have performed better in the prior interview if an interpreter had been present.

Fagan and Sumpter testified that Zivkovic had no apparent difficulty understanding the questions even though they sometimes had to ask the questions twice to prod a response. However, Zivkovic recollected that he had difficulty understanding some of the questions, that the questions had to be repeated many times, and he would have done better if an interpreter were present. Zivkovic also testified that he asked to read the questions but that his request was denied. Sumpter recalled no request from Zivkovic to read the questions or have them repeated. Sumpter and Fagan testified that Zivkovic obtained a consensus interview score of "C." A score of "A" or "B" was necessary for further consideration. In a letter dated June 26, 1997 to Zivkovic, Fagan stated, "Although your qualifications are strong, we regret to inform you that another candidate was selected for the position for which you interviewed."

On September 14, 2000, the district court made oral findings of facts and conclusions of law. The district court concluded that "the surrounding evidence . . . supports the defendant and not the plaintiff," but did not resolve material factual disputes required to support that conclusion. Instead, the district court found that "even under Plaintiff's version of the

facts," the defendant did not fail to make an accommodation. The district court reasoned that Zivkovic's statement at the end of the first interview that he could have done better with an interpreter, at most, imposed upon Edison a duty to inquire about whether an interpreter was needed. The district court ruled that Edison satisfied that duty by asking Zivkovic's mother, who the court determined was Zivkovic's agent, whether he needed an interpreter. The district court found that the mother's response "to ask her son" was not a request for an interpreter. The court concluded that Zivkovic asked his mother to request an interpreter but she did not do so.

The district court also did not resolve the question whether Zivkovic requested to see the questions in the second interview. The district court instead reasoned that since Zivkovic "did not pursue the better accommodation of an interpreter, and in essence said, 'Let's go ahead with this interview. I can do this as a normal person would do it. I can read lips. I can get along in this world of sound, and let's do it,' it was then appropriate for the defendant to not show [Zivkovic] the questions."

The district court found, on the issue of refusal to hire, "the defendant's witnesses have stated appropriate reasons for the failure to hire .... there is no evidence presented that indicates pretext .... All of the interviewers have given appropriate reasons for the decision not to hire." The district court further found that Zivkovic misinterpreted Edison's efforts to be fair to him as promises of a job. The district court ordered that judgment be entered in favor of Edison. Judgment was entered accordingly on September 25, 2000. Zivkovic filed a timely notice of appeal on October 19, 2000.

## DISCUSSION

Zivkovic argues that the district court abused its discretion when: 1) denying his motion for a jury trial; 2) denying his motion to amend his complaint; 3) denying his motion to modify the scheduling order; and 4) limiting the trial to two issues and to a time limit of eight hours, twenty minutes. Zivkovic also contends that Edison waived the asserted affirmative defense of reasonable accommodation by not pleading the defense in its answer. Finally, Zivkovic posits that the district court erred in granting judgment in favor of Edison on his claims that Edison failed to provide a reasonable accommodation and discriminated against him by not hiring him.

### Jury Demand

■■■ Zivkovic's motion for a jury trial was untimely because he filed it more than ten days after Edison filed its answer. See Fed.R.Civ.P. 38(b). We review the district court's denial of Zivkovic's untimely demand for a jury trial for an abuse of discretion. See Pac. Fisheries Corp. v. HIH Cas. & Gen. Ins. Ltd., 239 F.3d 1000, 1002 (9th Cir.), cert. denied — U.S. —, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Rule 39(b) of the Federal Rules of Civil Procedure provides:

> Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

In Pacific Fisheries, we held that the district court's discretion under Rule 39(b) is narrow and "does not permit a court to grant relief when the failure to make a timely demand results from an oversight or inadvertence" such as a good faith mistake of law with respect to the deadline for demanding a jury trial. 239 F.3d at 1002–

03. Zivkovic argues that his untimely demand for a jury trial should be excused because he filed his complaint *pro se* and was unaware of the requirements of Rule 38(b). However, Zivkovic's good faith mistake as to the deadline for demanding a jury trial establishes no more than inadvertence, which is not a sufficient basis to grant relief from an untimely jury demand. *See id.; see also Kulas v. Flores*, 255 F.3d 780, 784 (9th Cir.2001) (holding that a pro se plaintiff waived any right to a jury trial by failing to file a timely demand as required by Fed.R.Civ.P. 38(b)).

### Amended Complaint

▇▇▇ We review the district court's denial of a motion to amend a complaint for an abuse of discretion. *See United States ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corp.*, 151 F.3d 1139, 1147 (9th Cir.1998). Although leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), it "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990). The district court may deny a motion for leave to amend if permitting an amendment would, among other things, cause an undue delay in the litigation or prejudice the opposing party. *See id.*

Upon reconsideration, the district court denied the motion to amend because the motion was filed "only several days before the discovery cut-off and less than three months before trial was to commence." The district court also found that an "amended pleading would have prejudiced defendant, which would then have had a very limited amount of time to respond."

Zivkovic's proposed amended complaint would have added causes of action for promissory estoppel and constructive fraud. The additional causes of action would have required further discovery, which was to close five days after the motion to amend was filed. The requirement of additional discovery would have

prejudiced Edison and delayed the proceedings. The district court, therefore, did not abuse its discretion when denying Zivkovic's motion to amend. *See Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir.1998) (affirming the district court's denial of motion to amend pleadings filed on the eve of the discovery deadline).

### Scheduling Order

▇▇▇ "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order ... will not be disturbed unless they evidence a clear abuse of discretion." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992) (citation and internal quotation marks omitted). In general, the pretrial scheduling order can only be modified "upon a showing of good cause." *Id.* at 608 (citing Fed.R.Civ.P. 16(b)). The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* at 609. If the party seeking the modification "was not diligent, the inquiry should end" and the motion to modify should not be granted. *Id.*

Zivkovic moved to modify the scheduling order to extend discovery by almost ten months, postpone the trial date for almost five months and increase the trial duration from one day to five days. Zivkovic asserts that the modifications were warranted because he was not sent a copy of the scheduling order until November 4, 1999, after most of the due dates had passed. Admittedly, the court's five-month delay in issuing a written scheduling order caused some confusion in this case. However, Zivkovic's counsel did not seek to modify that order until four months after the court issued the order. Zivkovic did not demonstrate diligence in complying with the dates set by the district court, and has

not demonstrated "good cause" for modifying the scheduling order, as required by Fed.R.Civ.P. 16(b). Accordingly, the district court did not abuse its discretion in denying Zivkovic's motion to modify the scheduling order. *See Johnson,* 975 F.2d. at 609.

## Trial Management

We review "challenges to trial court management for abuse of discretion." *Navellier v. Sletten,* 262 F.3d 923, 941 (9th Cir.2001). "Trial courts have broad authority to impose reasonable time limits." *Id.* "Such limits are useful to prevent undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* (internal quotation marks and citations omitted). Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues. *See Exxon Co. v. Sofec, Inc.,* 54 F.3d 570, 575 (9th Cir.1995).

The district court explained to the parties that trial was limited to one day and to the following two issues: (1) whether Zivkovic was offered and provided a reasonable accommodation; and (2) whether Edison failed to hire Zivkovic due to his disability. Because of interruptions, the court continued the trial to a second day and gave each party an additional twenty minutes for closing arguments.

Resolution of the two designated issues in Edison's favor would have necessarily resolved the case. Zivkovic has not indicated what additional evidence he would have offered on those two issues if provided more time. The district court therefore did not abuse its discretion in imposing issue and time limitations. *See Exxon,* 54 F.3d at 575–76; *Monotype Corp. v. Int'l Typeface Corp.,* 43 F.3d 443, 451 (9th Cir. 1994) (holding district court's time limit reasonable, even though it provided significantly less time than a party estimated would be required, when the party did not argue how it was damaged by the time limits).

## Waiver of Affirmative Defense

Zivkovic argues that Edison, by not pleading in its answer that it offered to accommodate Zivkovic, waived the affirmative defense of accommodation. A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense. *See Flav–O–Rich v. Rawson Food Service, Inc. (In re Rawson Food Service, Inc.),* 846 F.2d 1343, 1349 (11th Cir.1988) (recognizing that a defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense). In *Memmer v. Marin County Courts,* 169 F.3d 630, 633–634 (9th Cir. 1999), we held that the employee bears the burden of proving the existence of specific reasonable accommodations that the employer failed to provide. Edison's attempt to prove that it provided a reasonable accommodation merely negates an element that Zivkovic was required to prove and therefore was not an affirmative defense required to be pled in Edison's answer.

## Reasonable Accommodation

Because this is an appeal from a bench trial, we review the district court's findings of fact for clear error. *Saltarelli v. Bob Baker Group Med. Trust,* 35 F.3d 382, 384 (9th Cir.1994) (citing Fed.R.Civ.P. 52(a)). The clear error standard also "applies to the results of 'essentially factual' inquiries applying the law to the facts." *Id.* The district court's conclusions of law are reviewed de novo. *Id.* at 385.

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability of such individual **in regard to job application procedures, the hiring,** advancement, or discharge of employees, employee compen-

sation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a)(emphasis added). " '[Q]ualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability **who is an applicant** or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A) (emphasis added).

In *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir.2000) (en banc), *vacated on other grounds, U.S. Airways, Inc. v. Barnett,* — U.S. —, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002), we held that once an employee requests an accommodation or an employer recognizes the employee needs an accommodation but the employee cannot request it because of a disability, the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation.[2] This same requirement applies to applicants for employment. *Barnett,* 228 F.3d at 1114 n. 5. An employee is not required to use any particular language when requesting an accommodation but need only "inform the employer of the need for an adjustment due to a medical condition." *Id.* The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the

employee's request; and (3) offering an accommodation that is reasonable and effective. *Id.* at 1114–15. "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown" in the interactive process. *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130, 1137 (7th Cir.1996). An "employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *E.E.O.C. v. Yellow Freight Sys. Inc.,* 253 F.3d 943, 951 (7th Cir.2001) (en banc) (citation and internal quotation marks omitted); *see also Barnett,* 228 F.3d at 1115 (requiring the selected accommodation to be reasonable and effective).

The parties do not dispute that Zivkovic was a qualified individual with a disability. Zivkovic triggered the interactive process when he informed Edison of his need for an adjustment by indicating that he was hard of hearing on his application, and then stating in the first interview that he would have done better if provided a sign language interpreter. Apparently, Edison held the same belief, or it would not have scheduled the second interview. However, the lack of findings by the district court renders it impossible to determine if the parties appropriately engaged in the interactive process.

The district court concluded that Edison offered an interpreter but Zivkovic declined the offer. The court came to its conclusion without making any factual findings. Instead, the court determined that its conclusion was appropriate even under Zivkovic's version of the facts. The court's conclusion, however, is not supported by Zivkovic's version of the facts.

---

**2.** We recognize that the district court did not have the benefit of the *Barnett* ruling when this case was decided.

Edison did not appropriately engage in the interactive process when Fagan asked Zivkovic's mother whether her son needed an interpreter, because that was not a direct communication with Zivkovic. Under Zivkovic's version of the facts, Edison never explored with Zivkovic possible reasonable accommodations, as he was never allowed to read the interview questions and no one ever offered him an interpreter. At a minimum, the interactive process was triggered without an appropriate response from Edison if, as Zivkovic testified, he asked to read the interview questions and the request was denied without Edison offering an alternative.

■ Under Edison's version of the facts, Edison may have appropriately engaged in the interactive process and provided a reasonable accommodation by allowing Zivkovic to read the questions in the first interview and asking Zivkovic if he needed a sign language interpreter in the second interview, which was the accommodation Zivkovic alleges he was seeking. Even under Edison's version of the facts, however, Fagan's oral question to Zivkovic as to whether Zivkovic needed an interpreter may not have satisfied the requirement to engage in an interactive process. If Zivkovic misunderstood the question being asked, Edison may have been required to ask the question in writing or through a sign language interpreter. These issues, however, cannot be appropriately addressed because the district court did not resolve the factual disputes present in the record. *See* Fed.R.Civ.P. 52(a)("In all actions tried upon the facts without a jury . . ., the court shall find facts specifically and state separately its conclusions of law thereon").

In *Alpha Distrib. Co. v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir.1972), we held that Rule 52(a) requires the district court's findings to "be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." *See also Norris v. City and County of San Francisco*, 900 F.2d 1326, 1329, 1332 (9th Cir.1990) (applying the same rule in a discrimination case). The district court's failure to determine whether Edison engaged in the interactive process in light of the contravening evidence precludes us from reviewing the court's legal conclusions on this issue. *See Alpha Distributing*, 454 F.2d at 453; *Norris*, 900 F.2d at 1329, 1332.

### Discrimination

■ To state a prima facie case for discrimination under the ADA, Zivkovic "must prove that he is a qualified individual with a disability who suffered an adverse employment action because of his disability." *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1353 (9th Cir.1996). The district court found that all of the interviewers gave appropriate reasons for not hiring Zivkovic. If, however, the interviews were conducted in a discriminatory manner without providing a reasonable accommodation, the interviewers' non-selection of Zivkovic would not be appropriate. Zivkovic may have suffered an adverse employment action because of his disability, but that determination hinges on resolution of the factual dispute. The district court ruled without resolving the conflicting testimony between Edison and Zivkovic, yet it is the obligation of the trier of fact to do just that. *See Reynolds v. Royal Mail Lines, Ltd.*, 254 F.2d 55, 57 (9th Cir.1958) (holding that in a bench trial, it is the trial judge's responsibility to resolve disputes arising from conflicting testimony); *Fisher v. Roe*, 263 F.3d 906, 912 (9th Cir.2001) ("Trial courts find facts. We do not."), *abrogated on other grounds, Mancuso v. Olivarez*, 292 F.3d 939, 944 n. 1 (9th Cir.2002).

## CONCLUSION

Because the district court failed to make complete factual findings, we vacate the district court's judgment and remand with the instruction that the district court make clear findings in accordance with Rule 52(a) and specifically determine, in light of those findings, whether Edison: (1) appropriately engaged in the interactive process; (2) offered a reasonable accommodation; and/or (3) discriminated against Zivkovic by not hiring him. *See Norris*, 900 F.2d at 1332. The district court's procedural rulings are affirmed. Each party is to bear its own costs on appeal.

**AFFIRMED IN PART; VACATED and REMANDED IN PART.**