**GENERAL INDUSTRIAL DEVELOPMENT TRADING, INC., Plaintiff—Appellant,**

**v.**

**COMPUSA, INC., a Delaware corporation, Defendant—Appellee.**

**No. 02–55444.**

**D.C. No. CV–00–00714–DOC.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 2003.

Decided July 31, 2003.

Before NOONAN, KLEINFELD, and WARDLAW, Circuit Judges.

### MEMORANDUM *

General Industrial Development Trading, Inc., assignee of PL Media, Inc., appeals an adverse judgment following a bench trial on its contract claims against CompUSA, Inc. We review the district court's findings of fact for clear error.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts

*Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000) (en banc). We review the district court's conclusions of law de novo. *Zivkovic*, 302 F.3d at 1088. This includes the interpretation and meaning of contract provisions, and the determination of whether contract language is ambiguous. *Yu v. Albany Ins. Co.*, 281 F.3d 803, 807 n. 2 (9th Cir.2002).

The closing paragraph of the March 19, 1997 agreement between the parties reads:

> And COMPUSA Inc. shall not interfere in anywhere with or become involved in implementation of rebate program by PL Media Inc.'s fulfillment house. PL Media Inc. shall be from any unauthorized deduction such as a resubmission of rebate requests as COMPUSA Inc. has already approved the rebate terms and conditions.

The district court did not err in finding that this provision is ambiguous, both when read separately and in light of the contract as a whole. The provision speaks explicitly of "terms and conditions," supporting this reading.

We interpret this contract by a standard of "objective reasonableness." *See, e.g., Med. Operations Mgmt., Inc., v. Nat'l Health Labs., Inc.*, 176 Cal.App.3d 886, 222 Cal.Rptr. 455, 459 (1986). To aid in this determination, we look to the course of dealing between the parties. Although GIDT now argues that the contract was intended to prevent CompUSA from sending any further payments to CPG, CompUSA in fact made two large payments to the clearinghouse very shortly after the agreement was signed. PLM was notified of these payments, and did not object. In light of this, and the fact that prior to the March agreement PLM's representative had stated that he understood it would be the practice of CompUSA to pay the clearinghouse and deduct these payments from its amount owed to PLM, the district court correctly held that, to the extent the March Agreement was intended to prevent such payments, this term of the agreement was modified by the subsequent course of dealing between the parties.

GIDT's breach of contract claims also include a claim against CompUSA for not fulfilling its obligation under the March agreement to purchase at least one million dollars worth of floppy disks in May and June of that year. GIDT bore the burden of proof for this claim at trial, and did not establish that CompUSA wrongfully failed to place purchase orders.

These findings are not clearly erroneous. The decision of the district court is

AFFIRMED.

of this circuit except as provided by Ninth Circuit Rule 36–3.