CHENG HSU, Plaintiff—Appellee,

v.

PBIG MANAGEMENT COMPANY Inc., a California corporation; et al., Defendants—Appellants,

and

Globaltel Resources Inc., a corporation; et al., Defendants.

No. 05–16608.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 2007.

Filed Aug. 18, 2008.

W. Fletcher, Circuit Judge, dissented in part and filed opinion.

Kenneth I. Litton, William H. Russell, San Mateo, CA, Mohammed K. Ghods, William Stahr, Ghods Law Firm, Santa Ana, CA, for Plaintiff-Appellee.

Mattaniah Eytan, Law Offices of Mattaniah Eytan, Corte Madera, CA, for Defendants-Appellants.

Before: HUG, W. FLETCHER, and CLIFTON, Circuit Judges.

## MEMORANDUM *

Defendants Ken Huang and David Wu appeal from the district court's judgment

in favor of Plaintiff Cheng Hsu following a bench trial. Defendants challenge the district court's findings of fact and conclusions of law, its imposition of time limits during trial, and its interpretation of California Corporations Code § 25102(h). We affirm.

Defendants formed a corporation, PBIG Management Co., Inc. (PBIG), and five limited partnerships, and sold securities to Plaintiff in the five partnerships. Based on the district court's factual findings, which we do not find clearly erroneous, Defendants engaged in general solicitation in connection with the sale of their securities. Defendants offered to sell their securities in a public library during PBIG meetings that the district court found "any interested party could attend." In addition, Defendants announced the PBIG investment opportunity and invited potential investors to attend the PBIG meetings at Pacific Bay Investment Club (PBIC) meetings. PBIC meetings were open to the public, held in a public library, and announced in a local newspaper. Had Defendants offered or sold PBIG securities at PBIC meetings, they would have violated state and federal securities laws. See 17 C.F.R. § 230.502(c) (prohibiting an issuer or any person acting on its behalf from selling unregistered securities by means of general solicitation, including, but not limited to, "any seminar or meeting whose attendees have been invited by any general solicitation or general advertising."); Cal.Code Regs. tit. 10, § 260.102.12(j) (same).[1] The fact that these sales oc-

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The dissent argues that the prohibition on general solicitation under California law applies only when disclosure materials are distributed. Defendants distributed documents at its meetings disclosing the finances, history, products, sales figures, target markets, competitors, management teams, strategy, partners, and potential acquisition or IPO opportunities of the companies in which Defendants offered investments. Because we find that disclosure materials were distributed in this case, we do not decide whether the state securities laws permit individuals to engage in general solicitation in connection with the

curred at subsequent, equally accessible PBIG meetings, to which the attendees of the generally advertised PBIC meetings were invited, did not materially diminish the public nature of the offerings or of Defendants' solicitation. We therefore affirm the district court's conclusion that Defendants engaged in general solicitation.

■ As Defendants engaged in general solicitation, they cannot satisfy the elements of California Corporations Code § 25102(f)'s registration exemption. *See* Cal. Corp.Code § 25102(f)(4); Cal.Code Regs. tit. 10, § 260.102.12(j). Their arguments concerning the district court's determinations that they failed to establish that all investors were accredited and represented that their purchases were not for resale are beside the point. Defendants are not eligible for the statutory exemption.

■ For the same reason, Defendants' contention that the district court's improper imposition of strict time limits prevented them from presenting evidence that would have established the qualifications or accreditation of each investor does not matter. Even if Defendants were given additional time to put on additional evidence of investor qualifications, and the district court found that all investors were qualified, Defendants would still have failed to satisfy the requirements for exemption under California Corporations Code § 25102(f) because they engaged in general solicitation. They therefore have not demonstrated that the district court's imposition of time limits "adversely and unfairly affected their case." *See Hansen v. Comm'r*, 820 F.2d 1464, 1467 (9th Cir. 1987).

■ Finally, we agree with the district court that California Corporations Code § 25102(h), which exempts from registration sales of common voting stock "in a

corporation," is inapplicable to sales of partnership interests. On its face, the exemption applies only to corporations, and the legislature's express inclusion of both corporations and partnerships in an analogous exemption in the same statute indicates that it did not intend subsection (h) to also apply to partnerships. *See* Cal. Corp.Code § 25102(h), (n)(1); *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (holding that where a legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion."). The district court therefore properly rejected Defendants' argument that their sales of unregistered securities in the five PBIG limited partnerships were exempt under California Corporations Code § 25102(h).

**AFFIRMED.**

WILLIAM A. FLETCHER, Circuit Judge, dissenting in part:

Plaintiff-appellee sued under federal and state securities laws for allegedly improper sale of five unregistered securities by defendants-appellants. After a bench trial, the district court ruled for the plaintiff-appellee, holding, *inter alia*, that defendants-appellants were not exempt from California registration requirements for the five securities. The district court awarded plaintiff-appellee a refund of the amount of his investment plus interest. The panel majority affirms.

I respectfully dissent with respect to the claimed exemption from the registration requirements of California law. The issue is whether defendants-appellants qualified for an exemption by virtue of California

sale of securities in situations where federal law does not.

Corporations Code § 25102(f). That section contains a number of subsections. In order to qualify for an exemption under § 25102(f), a seller must satisfy the criteria of all of these subsections. My dissent concerns two of these subsections.

First, the majority misunderstands and therefore misapplies subsection 25102(f)(4). Under that subsection, in order to qualify for exemption the "offer and sale" of a security must not be "accomplished by the publication of any advertisement." The majority concludes that because the "Defendants engaged in general solicitation, they cannot satisfy the elements of California Corporations Code § 25102(f)'s registration exemption." Mem. at 3. I disagree. Under a proper construction of subsection 25102(f)(4), and under any construction of the evidence presented at trial, defendants did not "accomplish" the sale of the securities in question "by the publication of [an] advertisement." I would therefore reverse the district court's holding that defendants-appellants failed to satisfy the criteria of subsection 25102(f)(4).

Second, the district court held that the defendants failed to establish, for three of the five securities, that the "offer and sale" of the securities satisfied the criteria of subsection 25102(f)(2). Under that subsection, all purchasers of the security must have sufficient "business or financial experience" such that they "could be reasonably assumed to have the capacity to protect their own interests in connection with the transaction." The district court limited each side to eight hours in which to present its case. The majority concludes that whether defendants were given sufficient time to establish that the offer and sale of the three securities satisfied the criteria of subsection 25102(f)(2) "does not matter." That conclusion is based on the majority's misinterpretation of subsection 25102(f)(4). I conclude that the time limitations do matter, and that the district court did not give the defendants sufficient time. I would therefore remand to the district court to take further evidence on the question whether the criteria of subsection 25102(f)(2) were satisfied for these three securities.

### A. Subsection 25102(f)(4)

The district court and the panel majority conclude that, because of the nature of the advertising and solicitation done by the defendants, the sale of the five securities failed to satisfy the criteria of both federal and California law for exemption from registration. I agree with the district court and the panel majority with respect to federal law. But I disagree with respect to California law.

California Corporations Code § 25102(f)(4) provides that, in order to be exempt from the registration requirements of § 25100, the "offer and sale" of a security must not be "accomplished by the publication of any advertisement." The panel's unanimous conclusion that the district court committed no clear error in finding that the defendants engaged in general solicitation under federal law, Mem. at 2–3, does not preclude the defendants from being exempt under § 25102(f)(4). The language of § 25102(f)(4) establishes an exemption if certain investor qualifications are met and if "[t]he offer and sale of the security is not accomplished by the publication of any advertisement." A "general solicitation"—as distinct from an advertisement—does not disqualify an offeror from eligibility for the exemption under California law.

The majority appears to confuse the federal definition of "general solicitation or general advertising" in 17 C.F.R. § 230.502(c) with similar language in the California regulation interpreting subsection 25102(f)(4). The majority's mistake is to some degree understandable—the regu-

lations use nearly identical language. But it is a mistake nonetheless, for the language is used in a very different way in California law.

Under federal law, the relevant exemption from federal securities laws provides:

> Limitation on manner of offering. Except as provided in § 230.504(b)(1), neither the issuer nor any person acting on its behalf shall offer or sell the securities by any form of *general solicitation or general advertising,* including, but not limited to, the following:
>
> (1) Any advertisement, article, notice or other communication published in any newspaper, magazine, or similar media or broadcast over television or radio; and
>
> (2) Any seminar or meeting whose attendees have been invited by any general solicitation or general advertising. . . .

17 C.F.R. § 230.502(c)(1)-(2) (emphasis added).

Under California law, the exemption is available if certain other conditions are met and if "[t]he offer and sale of the security is not accomplished *by the publication of any advertisement.*" Cal. Corp. Code § 25102(f)(4) (emphasis added). The statute itself makes no reference to solicitation. The regulation interpreting subsection 25102(f)(4) states:

> Publication of Advertising. Section 25102(f)(4) of the Code is to be interpreted so as to facilitate the circulation of disclosure materials to offerees and purchasers, so long as such materials are not disseminated to the public. . . . Private placement memoranda, offering circulars and similar disclosure documents are not "disseminated to the public" for the purposes of Section 25102(f) of the Code if the issuer limits such circulation

> (1) to persons reasonably believed to be interested in purchasing the securities or
>
> (2) to persons whom the issuer believes may meet the qualifications required of purchasers pursuant to such section and the rules thereunder, provided with respect to clause (1) and clause (2) that *neither the issuer nor any person acting on its behalf shall offer or sell the securities by any form of general solicitation or general advertising, including, but not limited to, the following:*
>
> (A) *Any advertisement, article, notice or other communication published in any newspaper, magazine, or similar media or broadcast over television or radio; and*
>
> (B) *Any seminar or meeting whose attendees have been invited by any general solicitation or general advertising.* The preceding sentence does not create any presumption that a dissemination of materials otherwise than as described therein is a "publication of advertising," and the determination of that question shall be made without reference to that sentence.

Cal. Admin. Code tit. 10 § 260.102.12(j) (emphasis added).

The italicized portions of the state regulation are identical to the "Limitation on manner of offering" provision of 17 C.F.R. § 230.502(c). But the context in which those words are used is entirely different in the state regulation. The state regulation concerns the distribution of disclosure documents. It creates a safe harbor from the state prohibition on the "publication of any advertisement" for issuers who limit the circulation of such documents to certain groups of individuals and who comply with the more rigorous federal prohibition on "general solicitation or general adver-

tising." In other words, California law is concerned with whether an issuer offers or sells securities "by any form of general solicitation or general advertising" only when the issuer circulates private placement memoranda, offering circulars, and similar disclosure documents. Those documents are presumptively not "advertisements" under the language of subsection 25102(f)(4), but may be construed as such if the issuer sells the securities through general solicitation or general advertising, as defined by federal law. When the issuer does not circulate such disclosure documents, it must merely comply with the narrower requirement of subsection 25102(f)(4), which states that "[t]he offer and sale of the security [must] not [be] accomplished by the publication of any advertisement."

The district court found that PBIG had provided non-accredited investors with "executive summaries" and other information as required under 17 C.F.R. §§ 230.502(b)(2), 230.505(b). The district court did not make any findings of fact that would suggest that these materials constituted "advertisements" under § 25102(f)(4), or that they were otherwise "disseminated to the public." *See* Cal. Corp.Code § 25002 (" 'Advertisement' means any written or printed communication or any communication by means of recorded telephone messages or spoken on radio, television, or similar communications media, *published* in connection with the offer or sale of a security." (emphasis added)); *id.* § 25014 (" 'Publish' means publicly to issue or circulate by newspaper, mail, radio or television, or otherwise *to disseminate to the public.*" (emphasis added)). Plaintiff-appellee has never argued that those materials were advertisements or that they were published.

Nothing in the record suggests that the defendants "accomplished" the "offer and sale" of their securities "by the publication of any advertisement." They did not publish any advertisement for the sale of their securities or for the meetings in which they sold their securities. The defendants appeared at meetings of the Pacific Bay Investment Club ("PBIC") and at those meetings announced their investment opportunities and invited potential investors to attend later meetings of the PBIG Management Company ("PBIG"). As the district court found, and as this panel unanimously concludes to be not clearly erroneous, such actions are sufficient to constitute "general solicitation" under federal law. But, as just explained, they are not enough to disqualify a defendant from the exemption under California law. It is not enough that there has been "general solicitation." Rather, under California law, there must have been "publication" of an "advertisement." There was no such advertisement in this case.

The earlier PBIC meetings were announced in the World Journal, a local Chinese community newspaper. Under the California Corporations Code, an "advertisement" is "any written or printed communication ... published in connection with the offer or sale of a security." Cal. Corp.Code § 25002. This definition does not encompass the PBIC announcements. A PBIC public relations officer testified before the district court that prior to each PBIC meeting she simply contacted the World Journal's community events editor, and the newspaper then included, without charge, an announcement of the PBIC meeting in the paper's community events column. The officer testified that she "had nothing to do with PBIG," that PBIC was not connected with PBIG, and that she "never did any advertisements for PBIG." As the district court concluded, the PBIC "meeting notices in the World Journal did not include specific references to investment opportunities offered by PBIG in any of the subject limited partnerships or their

target portfolio companies." Therefore, the announcements were not "published in connection with the offer or sale of a security," and were not advertisements under state law.

But even assuming that the PBIC announcements were advertisements in a more general sense, they did not mention any sale of securities, and there was no attempt to sell securities at PBIC meetings. To conclude that an advertisement for a PBIC meeting also "accomplished" the sale of securities at the later PBIG meeting is to read the California statute too broadly. Under this reading, the statute would apply if the defendants had invited potential investors at an "advertised" garage sale, or in the lobby of virtually any movie theater. I therefore find no basis for the conclusion that the defendants accomplished the offer and sale of their securities "by the publication of any advertisement" under California law.

Because the defendants have satisfied subsection 25102(f)(4), the remaining question is whether their investors were qualified under subsection 25102(f)(2).

### B. Subsection 25102(f)(2)

A trial court has "broad authority" to manage the trial, including the authority "to impose reasonable time limits." *McSherry v. City of Long Beach*, 423 F.3d 1015, 1023 (9th Cir.2005) (internal quotation marks omitted); *see also Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir.2001). We review the exercise of that authority for abuse of discretion. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). I conclude that the district court abused its discretion not in imposing time limits per se, but rather in representing to counsel that the time limits were reasonable because the defendants would not need to prove the credentials of each individual investor, and then engaging in pre-

cisely such an individualized analysis in its findings of fact and conclusions of law.

The claims in this case involve ninety-two investors in five different investment entities. In a status conference in October 2001, defense counsel requested that the plaintiff provide a list of investors whose accreditation or qualifications were genuinely in dispute. In a pretrial conference on January 31, 2002, the trial court announced its "inclination" to allow each side eight hours to present witnesses and evidence. Counsel for the defendants expressed concern that eight hours would be insufficient to prove the credentials of all of the disputed investors, along with other matters they needed to prove in their defense. In response to these concerns, the court proposed a burden-shifting approach to resolving investor credentials:

[W]hat your client's state of mind is with respect to these accredited investors is the key thing. If they, in good faith, believed that they were accredited, that ends the inquiry.

You can certainly put on, it seems to me, very simply your client's basis for believing that certain people or certain categories of people or what he relied on with respect to groups of people to come to the conclusion that they were accredited.

It seems to me you've met, at least prima facie, your burden of proof.

Then it would switch back to ... plaintiff[ ] to come back and say, "You're wrong as to X, Y, and Z," and maybe that would then put the burden back on you to present some more evidence.

But ... if you offer some evidence that you had a good faith belief that these people were accredited, the plaintiff can't merely say, "Well, we don't believe it," and put the burden back on you.

They would have to offer some evidence that these people, in fact, were not accredited, which might put the burden back on you to come back and explain why they either were or why you had a good faith belief that they were.

Defense counsel represented to the court that "we have a lot of information about these people," but the court stated that the defendants would not need to establish credentials "investor by investor," but instead could categorize them:

[I]t would seem to me that ... the situation would be that with certain investors, you've got this kind of statement from them, "Here it is. They're each signed by them. That's what I relied on."

On these, they were investors in this prior business and I don't understand why you would be going through them one by one.

Defense counsel responded that "when the test is reasonable belief based on reasonable inquiry ..., one never knows what is enough."

Prior to trial, the plaintiff stipulated to the qualifications of ten of the ninety-two investors. Based on the trial court's representations during the January 31, 2002 conference, the defendants rationally concentrated their efforts during the bench trial not on all eighty-two remaining investors, but on those investors out of the eighty-two whom the plaintiff had singled out in his case-in-chief. The plaintiff called four such investors to testify, and the defendants staged a defense with respect to those plaintiffs. The defendants also rationally made general statements about their reasonable, good faith belief as to the qualifications of all of the investors, as the court had suggested would be appropriate. Based on the court's statements at the pretrial conference, defendants believed that the court would not require individualized evidence of the cre-

dentials of the remaining seventy-eight investors. Therefore, at trial the defendants had no reason to "argue how [they would be] damaged by the time limits, nor state what additional time was needed." *See Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 451 (9th Cir.1994).

In its findings of fact and conclusions of law, the district court found that the four contested investors were qualified. However, the court found that eight *other* investors—investors whose credentials were not specifically discussed in plaintiff's case-in-chief—were unqualified. The court engaged in a rigorous examination of the qualifications of these investors. For example, the court concluded that the defendants had made an insufficient showing of the sophistication of one investor because he "only represented that he had a master's degree." This level of analysis demonstrates that the defendants had presented "some evidence that [they] had a good faith belief" that the investor was qualified. There is no indication in the record that the plaintiff ever presented evidence to establish, " 'You're wrong as to [that investor],' and ... then put the burden back on [the defendants] to present some more evidence." Instead, the court *itself* shifted the burden back to the defendants after the trial was over.

Because the defendants had extensive information about the investors, but declined to present all of that information in light of both the time limitations and the court's representations in the pretrial conference, I would conclude that the court's management of the trial "adversely and unfairly affected [defendants'] case." *See Hansen v. Comm'r of I.R.S.*, 820 F.2d 1464, 1467 (9th Cir.1987).

I conclude that the district court abused its discretion in making representations to the defendants at the pretrial conference that it would employ a burden-shifting ap-

proach to examining investor credentials, limiting trial time in accordance with such an approach, and then failing to employ that approach in its findings of fact and conclusions of law.

I would therefore reverse the judgment of the district court and remand so that the defendants could have an opportunity to present a defense with respect to the credentials of the eight investors identified by the district court as unqualified.