**Bernadita C. ALDAN and Miguel Aldan, Plaintiffs,**

v.

**WORLD CORPORATION d/b/a Saipan World Resort, Defendant.**

**Civil No. 09–0017.**

United States District Court, Northern Mariana Islands.

April 30, 2010.

David G. Banes, O'Connor Berman Dotts & Banes, Saipan, MP, for Plaintiffs.

Thomas E. Clifford, Thomas E. Clifford Law Office, Saipan, MP, for Defendant.

MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' AMENDED MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY THE CASE MANAGEMENT SCHEDULING ORDER

MARK W. BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................348
   A.   Factual Background ...........................................348
   B.   Procedural Background ........................................349
       1.   The original Complaint .................................349
       2.   The scheduling order and first motion to amend ....................349
       3.   The amended motion to amend ...................................350
       4.   Arguments of the parties ....................................351
           a.   The Aldans' opening argument ................................351
           b.   World's opposition .......................................351
           c.   The Aldans' reply .......................................352
           d.   Oral arguments ..........................................353
       5.   Post–argument modification of the case management order ...........354

II. LEGAL ANALYSIS ...............................................354
   A.   Standards For Leave To Amend ................................354
   B.   Analysis ...................................................355
       1.   Amendment of the Complaint and the scheduling order ..............355
       2.   Good cause and diligence ....................................356
       3.   Prejudice ...............................................358
       4.   Futility ................................................360

III. CONCLUSION ..................................................361

¶ 1 This slip-and-fall case is before the court on the plaintiffs' second motion to amend their complaint, filed after the expiration of the deadline for amendments in the case management scheduling order. The proffered amendment seeks to add some additional factual allegations and a prayer for punitive damages, based on purportedly newly-discovered information that the conditions leading to the plaintiff's fall were known to the defendant, but not repaired, well before her fall. The defendant opposes the proposed amendment on the ground that the plaintiffs were not diligent in pursuing the information leading to the proposed amendment, where they made no timely discovery requests that might have revealed the purportedly new information on which their proposed amendment is based, and on the ground that the proposed amendment would be futile, because it fails to put the defendant on reasonable notice of the claim for punitive damages.

## I. INTRODUCTION

### A. Factual Background

¶ 2 In a Complaint (docket no. 1), filed May 19, 2009, plaintiffs Bernadita C. Aldan and Miguel Aldan, husband and wife, allege that, on or about December 29, 2007, Mrs. Aldan was a guest at the World Resort restaurant in Saipan for breakfast, when she slipped and fell near the beverage counter in the restaurant, causing her serious injuries. The Aldans allege that the cause of Mrs. Aldan's slip-and-fall was water on the floor by the beverage counter, which Mrs. Aldan did not see, and for which there was no warning sign. The Aldans also allege the following:

12. The floor supervisor came over to assist Mrs. Aldan. The supervisor admit-

ted to Mrs. Aldan that there was a drainage under the beverage counter and that the water came out of the drainage. The floor supervisor further admitted that he had been requesting the hotel's maintenance department to fix the problem but nothing happened.

13. World Resort was well aware that there was water on the floor by its beverage counter in the restaurant. Therefore it knew or should have known that the restaurant floor was wet and slippery. However, Defendant, with reckless indifference to the rights of its guests and invitees, including Mrs. Aldan, took no precautions to either warn guests or to make the restaurant less slippery or otherwise less dangerous.

Complaint, ¶¶ 12–13.

### B. Procedural Background

#### 1. The original Complaint

¶ 3 On May 19, 2009, the Aldans, United States citizens currently residing in Idaho, filed a diversity action in this federal court pursuant to 28 U.S.C. § 1332 against defendant World Corporation (World), a domestic corporation doing business in the Commonwealth of the Northern Mariana Islands (CNMI) as Saipan World Resort. The Complaint alleges that World owned and operated a hotel, World Resort, and the ground lease upon which the hotel is built, in Saipan, CNMI. The Complaint asserts claims of negligence and loss of consortium arising from Mrs. Aldan's slip-and-fall at the Saipan World Resort in December 2007 and prays for general damages, special damages, costs, attorney fees, allowable pre-judgment interest, and such other and further relief as the court may deem appropriate.

#### 2. The scheduling order and first motion to amend

¶ 4 On July 29, 2009, the court entered a Case Management Scheduling Order (docket no. 6), that, *inter alia*, set a deadline of November 2, 2009, for joinder of parties and motions to amend pleadings; a deadline of January 29, 2010, for service of all fact discovery; and a deadline of March 25, 2010, for all fact discovery motions. The Case Management Scheduling Order also set the Aldans' claims for a jury trial to begin September 6, 2010.

¶ 5 The deadline for amendment of the pleadings passed without the Aldans offering any proposed amendment. On February 5, 2010, however, the Aldans filed a Motion For Leave To Amend Complaint And To Modify The Case Management Scheduling Order (docket no. 14), pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure, seeking leave to amend their Complaint to add a prayer for punitive damages. In support of that motion, the Aldans asserted that they had recently discovered, by way of an interview of a newly-found witness, that World knew, prior to Mrs. Aldan's fall, that there was a continuous problem of liquid getting on the floor by the beverage counter, but did nothing about it. The Aldans asserted that they met the "good cause" requirement of Rule 16, because they had just recently found the new information on which their amendment was based, so that they had not been careless in discovering this information. They also asserted that they were timely seeking leave to amend, because they were doing so during the discovery stage. They also asserted that the amendment was proper under Rule 15. In an Opposition (docket no. 15), filed February 18, 2010, World opposed leave to amend on the grounds that the Aldans had not been diligent and had not shown any basis to make a punitive damages claim.

¶ 6 Chief United States District Court Judge Munson heard arguments on the Aldans' first motion to amend on February 26, 2010.[1] Following the hearing, Chief Judge Munson entered an Order Denying Without Prejudice Plaintiff's [sic] Motion For Leave To File First Amended Complaint And Amend Case Management Scheduling Order (docket no. 18) on February 26, 2010. Chief Judge Munson found that the proposed amended complaint was not attached to the

---

1. The hearing minutes mistakenly identify the motion at issue as a "motion to dismiss." Docket no. 17.

Aldans' motion, as required by Local Rule 15.1 and that the Aldans were unable to show "good cause" that the information they claimed had newly come to light was unavailable to them in the exercise of due diligence, where the existing Complaint mentioned the same recurring problem of a wet floor and World's failure to effect repairs, and the source of the "new information" was described as a friend of Mrs. Aldan's. However, Chief Judge Munson denied the motion for leave to amend "without prejudice." Chief Judge Munson also declined to amend any dates in the Case Management Scheduling Order.

### 3. The amended motion to amend

¶ 7 On March 25, 2010, the Aldans filed another Motion For Leave To Amend Complaint And To Modify The Case Management Scheduling Order (docket no. 19), and later that same day, filed an Amended Motion For Leave To Amend Complaint And To Modify The Case Management Scheduling Order (Amended Motion To Amend) (docket no. 20). The March 25, 2010, Amended Motion To Amend again seeks leave to add a prayer for punitive damages. Attached to the Amended Motion To Amend is the Proposed Amended Complaint (Exhibit A), a declaration of counsel, an affidavit of Mrs. Aldan, and an affidavit of Patricia Concepcion, the source of the purportedly newly-discovered information on which the amendments in the Proposed Amended Complaint are based.

¶ 8 Although the Aldans suggest that the proffered amendment merely adds a new prayer for punitive damages, which it does do in paragraph 3 of the Prayer, it also adds the following four paragraphs of allegations to the Aldans' first cause of action for negligence:

22. That Defendant World Resort had knowledge of the continuing problem of water and other materials accumulating on the restaurant floor near the beverage counter for around a year and a half before the [sic] Mrs. Aldan slipped and fell at the restaurant and yet did nothing to remedy the problem was outrageous conduct by Defendant World Resort and showed a reckless indifference to the rights of Mrs. Aldan and other patrons of the restaurant.

23. That in addition to Defendant World Resort, the management team of the resort, as part of its scope of employment, had the responsibility to maintain the premises in a reasonably safe condition, that the management team had been given notice of the continuing problem of water and other materials accumulating on the restaurant floor near the beverage counter in the middle of 2006, about a year and a half before the [sic] Mrs. Aldan slipped and fell at the restaurant and yet the management team did nothing to remedy the problem was outrageous conduct by the management team and showed a reckless indifference to the rights of Mrs. Aldan and other patrons of the restaurant.

24. That Defendant World Resort did nothing, after receiving notice about a year and a half prior to the occurrence, to remedy the problem of water and other materials accumulating on the restaurant floor near the beverage counter in reckless indifference to the rights of Mrs. Aldan and other patrons of the restaurant shows that Defendant World Resort has:

a) authorized the management team's failure to remedy the problem;

b) hired a management team that was unfit;

c) recklessly employed or retained the management team; and/or

d) ratified or approved the management team's failure to remedy the problem.

25. As a direct and proximate result of the negligence of the Defendant World Resort as set forth above, Mrs. Aldan slipped and fell at the restaurant.

Amended Motion To Amend, Exhibit A (docket no. 20–3) (Proposed First Amended Complaint/Demand For Jury Trial, ¶¶ 22–25).

¶ 9 In an Opposition (docket no. 21), filed April 12, 2010, World again opposes granting

the Aldans leave to amend their Complaint. On April 20, 2010, the Aldans filed a Reply (docket no. 25) in further support of their Amended Motion To Amend.

¶ 10 A hearing on the Aldans' Amended Motion To Amend was set before me, as a visiting judge, on April 23, 2010.[2] At the hearing, plaintiffs Bernadita and Miguel Aldan were represented by attorney David G. Banes of O'Connor, Berman, Dotts, & Banes in Saipan. Defendant World Corporation, doing business as Saipan World Resort, was represented by attorney Thomas E. Clifford of the Thomas E. Clifford Law Office in Saipan.

¶ 11 This matter is now fully submitted.

### 4. Arguments of the parties

#### a. The Aldans' opening argument

¶ 12 In support of their Amended Motion To Amend, the Aldans assert that they can show "good cause" for offering a proposed amendment only after the deadline for amendments in the scheduling order had expired. They explain that, almost immediately after the accident at issue in their Complaint, Mrs. Aldan noticed a lump in her breast, which led to diagnostic procedures in the CNMI, but those procedures could not or did not determine what the nature of the lump was. After the Aldans moved to Idaho in December of 2008, Mrs. Aldan went through further diagnostic procedures and was eventually diagnosed with and treated for breast cancer. The Aldans assert that, as a consequence of Mrs. Aldan's health problems and their move to Idaho, they were cut off from friends and relatives in the CNMI during the period of Mrs. Aldan's treatment. More specifically, they contend that, from the time of the accident until December 2009, Mrs. Aldan had no contact with Patricia Concepcion, a friend of Mrs. Aldan's and the purported source of the newly-discovered information on which the new prayer for punitive damages is based.

¶ 13 The Aldans returned to Saipan in December 2009. When Ms. Concepcion learned that Mrs. Aldan had returned to Saipan, and the two got back into contact, Mrs. Aldan learned for the first time that Ms. Concepcion had worked at World Resort in 2006 and had firsthand knowledge of the water problem on the floor by the beverage counter in the restaurant at that time, well before Mrs. Aldan's own accident. Indeed, Ms. Concepcion purportedly told Mrs. Aldan that she had complained to restaurant staff and her own supervisor, in human resources, about the problem with liquid on the floor, but nothing had been done about it. The Aldans assert that, promptly upon learning this new information, they arranged for their attorney to interview Ms. Concepcion and to seek leave to amend their Complaint, and that a motion to amend followed promptly thereafter.

¶ 14 The Aldans also assert that they have been investigating and continue to investigate the accident, but that they cannot, and should not be required to, interview every person who now works or ever worked for World. They also assert that they have been more than careful, in that their original Complaint does mention and give notice to World of recurring problems of liquid on the floor and World's failure to effect repairs. They assert that they simply did not want to press a claim for punitive damages until they had more evidence of World's "outrageous" conduct. They again assert that they are providing notice of their proposed amendment to demand punitive damages at exactly the right time, during discovery. They also argue that, because they have shown "good cause" for the belated amendment, in the form of "diligence" leading to their motion for leave to amend, Rule 15 applies, warranting that leave to amend be freely given. Finally, they assert that World will not be prejudiced, because discovery is on-going and World was already on notice of allegations of recurring problems and failure to make repairs.

#### b. World's opposition

¶ 15 In its Opposition, World opposes an order granting leave to amend the Aldans'

---

**2.** Chief United States District Court Judge Alex R. Munson, who heard and denied the Aldans' first motion for leave to amend, stepped down as an active judge on February 28, 2010, and is now a senior judge.

Complaint. World again asserts that the Aldans cannot show diligence, because the alleged statements from Ms. Concepcion add nothing materially new to the Complaint, citing paragraphs 12 and 13 of the original Complaint, which remain unchanged in the proffered Amended Complaint (although they are renumbered as paragraphs 11 and 12). World argues that, even if the situation described by Ms. Concepcion in 2006 is related to the alleged problem in 2007 that purportedly caused Mrs. Aldan's slip-and-fall, it is still the same basic problem: recurring problems with a wet floor by the beverage counter and the alleged failure of World to do anything about those problems. Thus, World contends that there was no reason for the Aldans' delay in seeking leave to amend other than lack of diligence.

¶ 16 World also argues that the Aldans have failed to show why any discovery or other meaningful investigation was not timely done to discover additional evidence supporting a claim for punitive damages. World points out that the Aldans served no written discovery on World until October 8, 2009, with responses not due until well after the November 2, 2009, deadline for motions to amend the Complaint, and did not request any depositions until after discovery was served. In short, World argues that the Aldans have not shown how the information on which they now rely was not timely ascertainable.

¶ 17 World also argues that the proffered amendment is futile, because it fails to put World on reasonable notice of the claim for punitive damages. World contends that this is so, because the proffered amendment merely parrots in conclusory fashion the applicable RESTATEMENT standard for punitive damages under CNMI law. By way of example, World points out that the proffered amendment does not allege that a World Resort principal or managerial agent knew about the alleged problem or ratified the alleged failure to fix it. At best, World argues, the paragraph in question (paragraph 24), simply confuses and misstates the applicable standard for punitive damages in the RESTATEMENT (SECOND) OF TORTS § 909.

#### c. The Aldans' reply

¶ 18 In reply, the Aldans assert that they were, indeed, diligent in discovering the new information on which their amended prayer for punitive damages depends and thereafter moving to amend and that the court's prior denial of leave to amend is not to the contrary. They point out that their first motion to amend was denied *without prejudice*, because they had not then shown "good cause," but that they are clearly permitted to make a renewed showing of "good cause," and their renewed showing is adequate.

¶ 19 In a complete change of direction, in their reply, the Aldans contend for the first time that the time frame in which they must have acted diligently is not *before* the deadline for an amendment in the scheduling order, or even *between* the deadline and the filing of the motion to amend, but *after* they discovered the new information on which the amendment is based, citing *Jimenez v. Sambrano*, 2009 WL 937042 (S.D.Cal.2009), and *Navarro v. Eskanos & Adler*, 2006 WL 3533039 (N.D.Cal.2006). They assert that they were diligent in investigating Ms. Concepcion's new information and proffering an amendment based on that new information, all within just a few weeks of learning of Ms. Concepcion's new information. They argue that it is absurd to imagine that they were required to interview all friends, acquaintances, and relatives in the hope that they might know something useful about their case. They also argue that they should not be faulted for waiting until they had a good faith basis for a prayer for punitive damages. They assert that, before Ms. Concepcion came forward, the only source of information that World knew about the problem of water on the floor by the beverage counter, but did nothing about it, before Mrs. Aldan's accident, was a World employee, the floor supervisor, who might—and in fact did—retract the statement that he made to Mrs. Aldan at the time of the accident.

¶ 20 Next, the Aldans assert that their proffered amendment is not futile, where World cites no authority that a Rule 8 or Rule 12(b)(6) pleading standard is the proper standard for determining futility of a proposed amendment, but even the recent

heightening of pleading standards by the Supreme Court requires only a plausible claim for relief. They assert that they had adequately previously pleaded the requirements for punitive damages under RESTATEMENT (SECOND) OF TORTS § 908, while World focuses on the new allegations that support a punitive damages claim pursuant to RESTATEMENT (SECOND) OF TORTS § 909. They argue that, if World would admit whether § 908 or § 909 is applicable, they would be happy to leave out the other alternative.

¶ 21 Finally, the Aldans assert that there can be no prejudice to World, where World acknowledges that there is really "nothing new" in the Aldans' proffered amendment other than a new prayer for punitive damages.

### d. Oral arguments

¶ 22 At the oral arguments on April 23, 2010, the Aldans reiterated that they have now cured the deficiencies in their motion to amend noted by Chief Judge Munson, but that his prior order, which denied their motion to amend "without prejudice," does not bar further consideration of their proffered amendment. They also explain that it turns out that the person they thought was a "floor supervisor," who admitted to Mrs. Aldan at the time of her accident that there had been water on the floor for some time, but no repairs had been made, was actually a waiter, so that the Aldans rightly had concerns at the time of their original Complaint that his admission was insufficient to establish the recklessness of World that is required by RESTATEMENT (SECOND) OF TORTS § 908 for an award of punitive damages. They also point out that the waiter's admission was uncertain as to the time frame for the water problem. Thus, they argue that their decision not to pray for punitive damages in the original Complaint, and not to do so until they learned of Ms. Concepcion's new information, was appropriate. They also argued that they have now added sufficient factual allegations to support a prayer for punitive damages. Similarly, they argued that they have now supported their motion to amend with affidavits demonstrating that the evidence on which the new prayer for punitive damages is based is, in fact, newly discovered.

¶ 23 The Aldans also reiterated their argument, made for the first time in their reply, that the appropriate time frame to determine whether or not they were diligent is the period after they discovered the new information, rather than the period before the deadline for amendments. They pointed out that they moved to amend within just a few weeks after learning the new information during a period that included the holiday season. They also reiterate that they had no way to know, prior to December 2009, that Ms. Concepcion had worked for World Resort in 2006, and no authority suggests that they were required to interview every friend or relative they had to determine whether or not they had relevant information.

¶ 24 The Aldans also asserted that there was no authority for World's insertion of pleading standards under Rules 8 and 12(b)(6), as defined by *Ashcroft v. Iqbal,* ——— U.S. ———, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), into the "futility" test for an amendment under Rule 15. Even if the pleading standards apply, they argued that they had pleaded enough to meet those standards. More specifically, they contend that either RESTATEMENT (SECOND) OF TORTS § 908 or § 909 could be applicable, that § 908 and § 909 are alternatives, and that they have certainly pleaded enough to satisfy § 908, even if they have not pleaded enough to satisfy § 909.

¶ 25 Finally, the Aldans asserted that the case got "side-tracked," because counsel for both parties believed that the case was very likely to settle at an early settlement conference and, therefore, belatedly started discovery when the case did not settle as expected. The Aldans represented, and World confirmed, that the parties intended to ask the court to move the trial date and to allow further time for discovery, in part because Mrs. Aldan must return to Idaho for further cancer treatment.

¶ 26 In response, World argued that, although paragraphs 12 and 13 of the original Complaint pleaded recklessness, there is no indication in the original Complaint that anyone told management about the problem and

that management then failed to remedy the problem. World also conceded that it was not arguing that the few weeks between discovery of Ms. Concepcion's information and the filing of the motion to amend demonstrated lack of diligence. Rather, World argued that the Aldans could have discovered information like Ms. Concepcion's much sooner, and her information only provides additional support for allegations that the Aldans had already made. Thus, World argues that, in the circumstances of this case, the time frame for diligence should run from the filing of the original Complaint through the expiration of the deadline for amendments. World asserted that the Aldans were not diligent in that time period, because of the tardiness of their discovery requests and their failure to identify and depose people, for example, pursuant to Rule 30(b)(6), who would have known whether the problem with liquid on the floor by the beverage counter was longstanding, whether management knew about it, and whether management neglected to make repairs. World also argued that, while it might be theoretically possible for a corporation to be liable for punitive damages in its own right under RESTATEMENT (SECOND) OF TORTS § 908, corporations are ordinarily only liable for punitive damages under RESTATEMENT (SECOND) OF TORTS § 909. World argued that the allegations supporting § 909 liability in the Proposed Amended Complaint are inadequate and that, while the present context is not a challenge to pleadings on a motion to dismiss, a proffered amendment should be facially adequate to satisfy the "not futile" standard of Rule 15.

¶ 27 World did confirm that it had no objection to rescheduling the trial, as late as November or December 2010, and resetting discovery and other deadlines accordingly.

### 5. Post-argument modification of the case management order

¶ 28 On April 27, 2010, I received an e-mail with notice of the parties' agreed amendments to the deadlines in the July 29, 2009, Case Management Scheduling Order (docket no. 6). The parties' proposed amendments were then incorporated into an April 29, 2010, Amended Case Management Scheduling Order. The pertinent agreed amendments to the deadlines, for present purposes, are the extension of the fact discovery deadline to June 30, 2010, the extension of the expert discovery deadline to July 30, 2010, and the rescheduling of the trial to begin on December 13, 2010.

## II. LEGAL ANALYSIS

### A. Standards For Leave To Amend

¶ 29 The Amended Motion To Amend in this case involves the applicability of Rules 15 and 16 of the Federal Rules of Civil Procedure. Rule 15(a)(2) provides that, except in circumstances not present here, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "[t]he court should freely give … when justice so requires." FED. R.CIV.P. 15(a)(2). Rule 16(b)(4), on the other hand, provides that "[a] schedule [pursuant to a Rule 16(b)(1) scheduling order] may be modified only for good cause and with the judge's consent." FED.R.CIV.P. 16(b)(4).

¶ 30 As the Ninth Circuit Court of Appeals explained nearly a decade ago, in *Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000), the question of whether the liberal amendment standard of Rule 15(a) or the "good cause" standard of Rule 16 applies to a motion for leave to amend a complaint depends on whether or not the deadline for amendments in a Rule 16(b) scheduling order has expired:

Generally, Federal Rule of Civil Procedure 15(a) liberally allows for amendments to pleadings. In this case, however, the district court correctly found that it should address the issue under Federal Rule of Civil Procedure 16 because it had filed a pretrial scheduling order that established a timetable for amending the pleadings, and the deadline had expired before Jeney, Gentile, and Coleman moved to amend. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir.1992).

*Coleman*, 232 F.3d at 1294. The court then explained the Rule 16(b) standard, as follows:

Under Rule 16(b), [the movants] must show good cause for not having amended their complaints before the time specified

in the scheduling order expired. *See [Johnson,* 975 F.2d] at 608–09. This standard "primarily considers the diligence of the party seeking the amendment." *Id.* at 609.

*Coleman,* 232 F.3d at 1294; *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992) (" 'A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15,' " quoting *Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C.1987), because the Rule 16 "good cause" standard primarily considers "the diligence of the party seeking the amendment," that is, whether the existing deadline " 'cannot reasonably be met despite the diligence of the party seeking the extension,' " quoting Fed.R.Civ.P. 16(b)).

¶ 31 Next, the court in *Coleman* explained its reasons for concluding that the movants in that case had not been "diligent":

> Jeney, Gentile, and Coleman did not move to amend their complaints to add the disparate impact theory of liability until their reply to Quaker's motion for summary judgment. Despite having hired a statistical expert years before the summary judgment motions and having received the first statistical report noting the disparities between the retention of older and younger employees over a year before filing for summary judgment, the employees had never moved to amend their complaints. In fact, Jeney and Gentile had the statistical report before they amended their complaint to add the Title VII allegations. Jeney, Gentile, and Coleman do not offer any explanation for their failure to amend their complaints earlier. *See Acri v. International Ass'n of Machinists and Aerospace Workers,* 781 F.2d 1393, 1398 (9th Cir.1986) (stating that even under the liberal Rule 15 standard "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."). Moreover, granting the request to amend the complaint would likely have required reopening discovery so that Quaker could develop its evidence to prepare its defenses to this theory. "A

need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir.1999). This prejudice to Quaker, although not required under Rule 16(b), supplies an additional reason for denying the motion. *See Johnson,* 975 F.2d at 609. Because Jeney, Gentile, and Coleman have failed to show diligence, "the inquiry should end." *Id.* Thus, the district court did not abuse its discretion when it denied their motions to amend their complaints.

*Coleman,* 232 F.3d at 1294–95.

¶ 32 With these standards in mind, I turn to consideration of the Aldans' Amended Motion To Amend.

### B. Analysis

#### 1. Amendment of the Complaint and the scheduling order

■ ¶ 33 The Aldans' Amended Motion To Amend comes well after the November 2, 2009, deadline for motions to amend in the Case Management Scheduling Order. Thus, Rule 16, not Rule 15, applies, at least in the first instance, to the Aldans' Amended Motion To Amend. *See Coleman,* 232 F.3d at 1294.

■ ¶ 34 Although the Aldans identified their Amended Motion To Amend as both a motion to amend their Complaint and a motion to modify the scheduling order, prior to oral arguments, they offered no separate arguments concerning modification of the scheduling order, nor did they identify what deadline had applied to motions to amend under the scheduling order or what, if any, deadlines other than the deadline for amendments might be affected by allowing the belated amendment. That failure is not fatal, however, because the Ninth Circuit Court of Appeals has recognized that, where a motion to amend the complaint is filed after the deadline in a scheduling order, but no motion to modify the scheduling order is filed, the motion to amend the complaint is also deemed to be a motion to amend the scheduling order, and the court's denial of that motion to amend the complaint is deemed to

be a denial of the motion to amend the scheduling order. *Johnson,* 975 F.2d at 608–09 (noting that other courts had so held and "see[ing] no reason to deviate from that approach"). Here, unlike the situation in *Johnson,* the Aldans did acknowledge in their Amended Motion To Amend both the need to obtain leave to amend the complaint and the need to amend the scheduling order to permit belated amendment of the complaint, so that if there was no fatal deficiency in *Johnson,* there was certainly no fatal deficiency here.

### 2. *Good cause and diligence*

¶ 35 Here, where Rule 16 is applicable to the Aldans' Amended Motion To Amend, the Aldans must show "good cause" for not having amended their Complaint before the November 2, 2009, deadline in the scheduling order expired, which "primarily considers the diligence of [the Aldans]." *Coleman,* 232 F.3d at 1294. The Aldans may have offered an adequate explanation—in the form of Mrs. Aldan's health crisis and the Aldans' move to Idaho—for Mrs. Aldan's failure to learn that Ms. Concepcion had worked at Saipan World Resort in 2006 and had seen and complained about liquid on the floor by the beverage counter at that time, to no effect. An adequate explanation for Mrs. Aldan's failure to learn that Mrs. Concepcion had relevant information prior to December 2009, however, is a far cry from an adequate explanation of the Aldans' failure, as parties to litigation, to amend their Complaint earlier. *See id.* at 1295 (leave to amend was properly denied when the movants failed to offer any explanation for their failure to amend their complaint earlier).

¶ 36 There are, in my view, problems with the Aldans' failure to discover pertinent information sooner, notwithstanding Mrs. Aldan's health problems. For example, the basic facts and theory on which the Aldans base their prayer for punitive damages—that there had been liquid on the floor by the beverage counter for some time before Mrs. Aldan's accident, but World failed to correct the problem, and that such failure to effect repairs was "outrageous" or the result of "reckless indifference"—was known to the Aldans at the time of their original Complaint. *See id.* (considering whether the facts and theory have been known to the party seeking amendment since the inception of the case, and citing *Acri v. International Ass'n of Machinists and Aerospace Workers,* 781 F.2d 1393, 1398 (9th Cir.1986), for the proposition that, even under the liberal Rule 15 standard, "'late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action'"). The Aldans specifically alleged as much in paragraphs 12 and 13 of the original Complaint. *See also* Complaint, ¶ 22 (alleging that World's conduct was "outrageous" and showed "reckless indifference").

¶ 37 The Aldans also had the means to discover additional factual support for those allegations, for example, by noticing a Rule 30(b)(6) deposition, particularly if they were concerned that the statements of the purported "floor supervisor" admitting the prior existence of the problem with water on the floor would not be sufficient or would not hold up. Thus, I was not altogether convinced, on the basis of the written submissions, that the November 2, 2009, deadline for amendments could not "'reasonably be met despite the diligence of the party seeking the extension.'" *Johnson,* 975 F.2d at 609 (defining "good cause" and quoting FED. R.CIV.P. 16(b)).

¶ 38 Nor am I persuaded by the Aldans' belated argument, offered for the first time in their reply, then reiterated at oral arguments, that the proper focus of the "diligence" inquiry is not the period *before* the deadline for an amendment in the scheduling order, or even *between* the deadline and the filing of the motion to amend, but *after* they discovered the new information on which their amendment is based. Certainly, the advisory comment to the 1983 amendments to Rule 16 and the decisions in *Johnson* and *Coleman* suggest that, at the very least, the court should consider pre-deadline diligence or the lack thereof. *See* FED.R.CIV.P. 16(b), Advisory Committee Notes to 1983 amendment (explaining that "good cause" means that the deadline set in the scheduling order "cannot reasonably be met despite the dili-

gence of the party seeking the extension"); *Johnson*, 975 F.2d at 609 (relying on this statement in this advisory committee note to define "good cause"); *see also Coleman*, 232 F.3d at 1294 (considering whether the movants had "show[n] good cause for not having amended their complaints before the time specified in the scheduling order expired," then focusing on the movants' knowledge of their expert's statistical analysis years before they moved to amend their complaint based on his analysis and, indeed, well before filing a timely motion to amend on other grounds).

■ ¶ 39 I also am not convinced that *Jimenez v. Sambrano*, 2009 WL 937042 (S.D.Cal.2009), and *Navarro v. Eskanos & Adler*, 2006 WL 3533039 (N.D.Cal.2006), on which the Aldans rely for their "diligence after discovery of new information" standard, support the proposition that the *only* time frame that matters is the time frame after the discovery of new information. At best, these decisions—or the authorities on which these decisions are, in turn, based—properly support the proposition that, under case-specific circumstances, the "diligence" inquiry may turn on consideration of the movant's diligence before the deadline for amendments, between the deadline and the motion to amend, between the discovery of new information and the motion to amend, or in *all* of these time frames.[3]

■ ¶ 40 Nevertheless, at the oral arguments, the Aldans explained their apparent

---

3. Although the court in *Jimenez* stated that the "good cause" standard considers "whether the movant was diligent in seeking amendment once the need to amend became apparent," that court also noted that the "good cause" standard considers "whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for the amendment." *Jimenez*, 2009 WL 937042 at *2 (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D.Cal.1999), for both factors and a third factor, whether the movant participated in creating a workable Rule 16 order). The court then examined the plaintiff's diligence in other matters before counsel appeared on her behalf and sought leave to amend, so that *Jimenez* does not stand for the proposition that "diligence" looks *solely* at the time frame after new information is discovered. Indeed, *Jackson*, on which *Jimenez* relies, involved *denial* of a motion for leave to amend, at least in part, on the grounds that the movant had failed to demonstrate that she was unable to comply with the deadline in the scheduling order, because she had only just become aware of information that she could not have reasonably foreseen at the time of the Rule 16 scheduling order, she did not show that any "new and previously unavailable information" justified a belated amendment, *and* she failed to show diligence in filing her motion to amend and having it heard. *Jackson*, 186 F.R.D. at 609.

In the decision in *Navarro*, on which the Aldans also rely, the court did state that the defendants "mistakenly focus on the length of time between the deadline for filing an amended complaint and the plaintiff's motion, instead of the time between plaintiff's discovery of the new facts and her asking leave of the court to file the amended complaint" and that "[a] two-week delay [between discovering new information and filing a motion to amend] does not constitute a failure in diligence." *Navarro*, 2006 WL 3533039 at *2. Nevertheless, in *Navarro*, the court found that the plaintiff could not have obtained the information on which the amendment was based until after conducting discovery and deposing the defendant's employees, *id.*, but here, the Aldans simply did not pursue any timely discovery, before the deadline to amend, to attempt to discover information about how long the floor in the restaurant had been wet and whether World had done anything to rectify the problem before Mrs. Aldan's accident. Thus, the new information on which the proffered amendment was based in *Navarro* was the product of diligent discovery, while the new information on which the Aldans' proffered amendment is based is the product of happenstance in the absence of diligent discovery.

Moreover, the decision on which *Navarro* relies for the proposition that the pertinent time frame is the time between discovery of the new facts and a motion for leave to amend, *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087–88 (9th Cir.2002), does not support the contention that only diligence *after* discovering new information is relevant to a Rule 16 "good cause" inquiry. In *Zivkovic*, the court affirmed *denial* of leave to amend under a Rule 15 standard, not a Rule 16 standard. *Zivkovic*, 302 F.3d at 1087. The court in *Zivkovic* also denied a motion to amend the scheduling order as to deadlines for discovery, the date of the trial, and the duration of the trial, under a Rule 16 "good cause" standard, noting that "[t]he pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* at 1087 (quoting *Johnson*, 975 F.2d at 609). The court found that the movant did not seek to modify the order until four months after it was issued, did not demonstrate diligence in complying with the dates set by the district court, and did not demonstrate "good cause" for modifying the scheduling order. *Id.* at 1087–88. Thus, *Zivkovic* also stands for the proposition that the diligence inquiry considers the diligence of the movant *before the expiration of the pertinent deadlines*. Indeed, it

lack of diligence in pursuing discovery in this case before the deadline for amendments by pointing out that the parties had *both* expected the case to settle at an early settlement conference, so that they had not assiduously pursued discovery prior to that, because doing so might have involved unnecessary time and expense. After my years as a practicing attorney, I am sensitive to such a justification, and in my years on the bench, I have encouraged parties to avoid waste of time and the parties' funds with unnecessary discovery, other tactics that smack of litigation by attrition, hypertechnical disputes that could readily be resolved by conference and agreement, and overstaffing of cases. Thus, what appears, at first blush on a "dry" record, to be a lack of diligence prior to the deadline for motions to amend, appears, on consideration of the realities of this litigation, to be a more judicious decision about allocating or saving resources.[4]

¶ 41 Moreover, to the extent that a court can or should also consider the Aldans' diligence *after discovering new information and in moving for leave to amend,* World concedes that it is not arguing that the Aldans did not move diligently after they discovered Ms. Concepcion's information. I also find that a delay from mid-December 2009 to early February 2010 before filing a motion to amend (the first motion, which Chief Judge Munson denied without prejudice), during a period that included the holiday season, does not demonstrate a lack of diligence. While there may be circumstances in which a delay of a month-and-a-half between discovery of the new information and the motion to amend would not necessarily be diligent, under the circumstances presented here, it is not so long as to cause me grave concerns about the movants' lack of diligence.

¶ 42 Thus, the Aldans' purported lack of diligence does not doom their motion to amend offered only well after the deadline for amendments in the scheduling order. Instead, I find that the pre-deadline delays in discovery were excusable, and that the Al-

dans did act diligently to move to amend as soon as they did discover new information sufficient to support a prayer for and additional allegations in support of punitive damages.

### 3. Prejudice

¶ 43 Because I conclude that the Aldans' purported lack of diligence does not, standing alone, warrant denial of their Amended Motion To Amend, I will consider whether or not the timing of the motion is nevertheless so prejudicial as to warrant denial. *Cf. Coleman,* 232 F.3d at 1295 (stating that "prejudice" is not required to deny a motion to amend under Rule 16(b), but it "supplies an additional reason for denying the motion," citing *Johnson,* 975 F.2d at 609, suggesting that a motion to amend that did not require reopening discovery would be less prejudicial, but noting that " '[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint,' " quoting *Lockheed Martin Corp.,* 194 F.3d at 986).

¶ 44 Contrary to the Aldans' initial contentions, they are not simply seeking to add a new prayer for punitive damages that is adequately supported by prior factual allegations, but an additional *theory* of liability of World for punitive damages based on *additional factual predicates.* See Proposed Amended Complaint, ¶¶ 22–25. This difference makes this case distinguishable from *Jimenez,* on which the Aldans rely for the proposition that merely adding a prayer for punitive damages is not sufficiently prejudicial to warrant denial of leave to amend pursuant to Rule 16. *Jimenez,* 2009 WL 937042 at *3 (noting that there was no prejudice from addition of a prayer for punitive damages, "because the amendment sought does not raise any new facts or allegations").

¶ 45 Moreover, I am not convinced by the Aldans' argument that the additional allegations principally support punitive damages

---

does not even arguably stand for the proposition that the *only* time frame in which the movant must act diligently is the time frame after discovering new information, although it may suggest that diligence in this time frame is *also* relevant.

4. Of course, the parties would have been well-advised to keep the court informed of any agreements to delay or suspend discovery and to make timely motions to extend deadlines when settlement of the case did not occur as expected.

under Restatement (Second) of Torts § 909, but § 909 is only an "alternative" to their adequately pleaded prayer for punitive damages pursuant to § 908, or their contention that, if World would stipulate that § 908 is applicable, the allegations going to punitive damages under § 909 could be deleted.

Rather, applicable law suggests that punitive damages may be awarded against a master or other principal for acts of an agent *only if* certain factual predicates, set forth in § 909, are met.[5] *See Santos v. STS Enterprises, Inc.*, 2005 MP 4, 2005 WL 3776321, *4 nn. 13–14 (N.M.I.2005).[6]

5. Section 909 of the Restatement (Second) of Torts provides as follows:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
> (a) the principal or a managerial agent authorized the doing and the manner of the act, or
> (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> (d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Torts § 909 (1979).

6. A CNMI statute, 7 CMC § 3401, provides as follows:

> In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary; provided, that no person shall be subject to criminal prosecution except under the written law of the Commonwealth.

Thus, Restatement (Second) of Torts §§ 908 and 909 are applicable to the determination of punitive damages under CNMI by virtue of a statute adopting them.

In *Santos*, the Supreme Court of the Commonwealth of the Northern Mariana Islands explained applicable CNMI punitive damages law as follows:

> "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Pangelinan v. Itaman*, 4 N.M.I. 114, 119 n. 27 (1994) (*quoting* Restatement (Second) of Torts § 908 (1979)). In addition, under certain circumstances, punitive damages may be awarded against an employer because of an act of an employee. [Restatement (Second) of Torts § 909.]

*Santos*, 2005 MP 4, 2005 WL 3776321 at *4 (footnotes quoting Restatement (Second) of Torts §§ 908 and 909 omitted). The court then held that the trial court had properly submitted punitive damages to the jury, as to both defendants, an individual and the corporation that employed him, as follows:

> We find that the record provides more than sufficient evidence to support the trial court's

decision to allow the jury to consider the issue of punitive damages. The record shows that STS' [the corporate defendant] conduct was outrageous and showed a reckless indifference to the rights of others. Examples of conduct that support the punitive damages awards include STS's (1) failure to follow its own employee handbook regarding the training, testing, and treatment of its employees and supervisors concerning substance abuse, (2) failure to properly train Rasa [the individual defendant] in the safe operation of a 32,-500 pound commercial tour bus, (3) failure to properly investigate Rasa's driving history prior to employing him as a commercial tour bus operator or to prevent him from operating a commercial tour bus or drug testing him after two previous work related accidents and a speeding citation, (4) failure to prevent Rasa from operating a commercial tour bus after his direct supervisors were made aware of his continuing abuse of marijuana, and (5) providing Rasa with another tour bus and instructing him to continue his daily route immediately following an accident involving bodily injury.

> Together these factors provide sufficient evidence to satisfy the requirements of the Restatement and to support punitive damages against both Rasa and STS for outrageous conduct conducted with reckless indifference to the rights of others. Rasa, who was obviously aware that he had a significant drug problem, did not enter substance abuse treatment on his own volition, but continued to operate a commercial tour bus putting himself, his passengers, other drivers, and anyone else traveling the island's roads in danger. STS, for its part, put the safety of the people at risk by hiring Rasa and maintaining his employment while being aware of his drug addiction and by not implementing or enforcing the very policies put in place to prevent incidents such as the one before us.

*Santos*, 2005 MP 4, 2005 WL 3776321 at *4–*5 (footnotes omitted); *see id.* at n. 20 (noting that the employer's liability for punitive damages could also be affirmed on theories of negligent hiring or negligent entrustment, also recognized in § 909). The last quoted portion of the *Santos* decision could reasonably be read to mean that the "outrageous" or "recklessly indifferent" conduct requirement of § 908 for an award of punitive damages is met *as to an employer* only if one or more of the alternatives in § 909 are met.

The Aldans asserted that World had not cited any authority conclusively demonstrating that

¶ 46 This doubt about whether the requirements of § 909 *must* be met for an award of punitive damages against the only defendant in this case, a corporation, is significant in the context of a motion to amend. This is so, because the additional theories and predicates injected by § 909 will necessarily require additional discovery concerning the knowledge and action or inaction of managerial employees as well as other employees of World not contemplated by the claims, allegations, and prayers in the original Complaint. *See Coleman,* 232 F.3d at 1295 (an amendment may be prejudicial, if it would likely require reopening discovery so that the opposing party could develop its evidence to prepare to meet a new theory)

¶ 47 Nevertheless, any potential prejudice that might arise in this case from the belated addition of allegations supporting a punitive damages claim pursuant to § 909 is completely mitigated by the parties' agreement to continue the trial and to reopen discovery. Specifically, the parties have now agreed to extend the fact discovery deadline to June 30, 2010, to extend the expert discovery deadline to July 30, 2010, and to reschedule the trial to begin on December 13, 2010. Thus, there is no prejudice from the additional prayer for punitive damages and supporting allegations that warrants denial of the motion to amend, because the parties will have a full and fair opportunity to pursue discovery relating to those additional issues.

¶ 48 Therefore, consideration of the potential "prejudice" of the proposed amendment does not warrant denial of the Aldans' Amended Motion To Amend.

### 4. Futility

¶ 49 Even assuming that the Aldans can satisfy the requirements of Rule 16, by showing diligence, and can show that the proposed amendment is not prejudicial, World asserts that the Aldans cannot satisfy the liberal amendment standards of Rule 15, because their proffered amendment is futile. World

only § 909 was applicable to the question of punitive damages against a corporation, but neither have the Aldans cited any authority conclusively demonstrating that punitive damages can be awarded against a corporation on the basis of § 908 alone. Thus, I am not convinced that the

explains that the proffered amendment is futile, because it fails to put World on reasonable notice of the claim for punitive damages. The Aldans counter that World is improperly attempting to import a Rule 8 or Rule 12(b)(6) pleading standard into the determination of "futility" under Rule 15.

¶ 50 I am not convinced that a Rule 8 or Rule 12(b)(6) pleading standard is irrelevant to the determination of whether or not a proffered amendment is "futile" within the meaning of Rule 15. This is so, because the Ninth Circuit Court of Appeals has stated, "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada County, Idaho,* 119 F.3d 1385, 1393 (9th Cir.1997) (alteration in original) (quoting *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988)). This definition of "futility" is remarkably similar to the pre-*Iqbal* standard for a Rule 12(b)(6) dismissal for failure to state a claim. *See Stoner v. Santa Clara County Office of Educ.,* 502 F.3d 1116, 1120 (9th Cir.2007) (" 'Dismissal of the complaint [pursuant to Rule 12(b)(6)] is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief,' " quoting *McGary v. City of Portland,* 386 F.3d 1259, 1261 (9th Cir.2004)); *but see Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' " quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). There is also some logic to "symmetry" between the pleading standard and the amendment standard, as it would be a waste of resources to allow an amendment that would inevitably be dismissed for failure to state a claim. However, although the Ninth Circuit

new allegations in the proposed amended complaint, attempting to allege the requirements of § 909, can be neatly severed, and the remaining portions allowed, to avoid any potential prejudice from reopening discovery to address the § 909 allegations.

Court of Appeals in the past recognized the symmetry between the "futility" standard under Rule 15(a) and the pre-*Iqbal* dismissal standard under Rule 12(b)(6), the Ninth Circuit Court of Appeals has not, so far as I can tell, expressly recognized a continuing symmetry between the Rule 15(a) "futility" standard and the Rule 12(b)(6) standard as the latter standard was reformulated in *Iqbal.* Therefore, I must apply the standard for "futility" expressly stated by the Ninth Circuit Court of Appeals, for example, in *Sweaney.*

¶ 51 Here, although the allegations supporting punitive damages, particularly those supporting punitive damages pursuant to RESTATEMENT (SECOND) OF TORTS § 909, are pleaded in a conclusory manner, I cannot say that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim" for punitive damages against a corporation. *Sweaney,* 119 F.3d at 1393 (defining "futility" within the meaning of Rule 15). Therefore, the purported "futility" of the proffered amendment also does not prove fatal to the Aldans' Amended Motion To Amend.

### III. CONCLUSION

¶ 52 The Aldans' Amended Motion To Amend—unlike their prior motion to amend—will be granted. The Aldans have now shown the necessary diligence in seeking leave to amend after the deadline for amendments in the Case Management Scheduling Order had expired, as required by Rule 16, and their proffered amendment is neither so prejudicial nor so futile that leave to amend should be denied.

¶ 53 THEREFORE, the Aldans' March 25, 2010, Motion For Leave To Amend Complaint And To Modify The Case Management Scheduling Order (docket no. 19), as amended by the Aldans' March 25, 2010, Amended Motion For Leave To Amend Complaint And To Modify The Case Management Scheduling Order (Amended Motion To Amend) (docket no. 20), is **granted.**

¶ 54 **IT IS SO ORDERED.**